GRANT MARBLE COMPANY, Appellant, vs. MARSHALL & ILS-
LEY BANK and others, Respondents.

*October 26, 1917—February 5, 1918.*

*Building contracts: Construction: "Work:" Delay in performance:
Penalty or liquidated damages? Intention of parties.*

1. In a contract whereby plaintiff agreed to furnish and deliver the
   marble with which parts of the walls of a building were to be
   faced by specified dates as to specified units of the structure,
   and all "so that the entire work must be completed not later
   than the first day of December, 1911, if the progress of the work
   at the building demands it," the words "progress of the work at
   the building" are *held* to refer to the particular work which was
   the subject of the contract, *i. e.* the marble work; so that it was
   plaintiff's duty to deliver the marble at the building by the
   dates specified or as fast as the masons were ready to set it,
   regardless of whether delay in such delivery necessarily caused
   delay in the mason work as a whole.
2. So, also, in a provision in said contract by which "the contractor
   agrees to pay the owner $10 per day for each and every day the
   work remains unfinished after the day set for its completion,"
   the word "work" refers to the marble work.
3. The provision above quoted, as to payment of $10 per day, is
   wholly distinct from a further provision in the same contract,
   as follows: "The mason contractor being under penalty of $50
   per day to complete his contract by a certain date, this con-
   tractor agrees to assume the responsibility for this penalty in
   case he delays the mason in completing his work according to
   the terms of his contract."
4. Where a building contractor agrees to pay to the owner a certain
   sum per day for each and every working day the work remains
   incomplete after a specified time, the question whether this
   provides for liquidated damages or merely for a penalty is to be
   determined, not by what it is called in that or in another con-
   tract relating to the same building, but by the real intention of
   the parties.
5. In such a case the probable consequences of delay, from the stand-
   point of the parties at the time of making the contract—as
   whether the probable loss from delay would be great or small
   compared with the sum named, and whether the actual dam-

ages would probably be easy or difficult of ascertainment,—constitute a very persuasive indication of what the parties intended.

6. Thus, in this case, an agreement to pay $50 per day is *held* to provide for liquidated damages, since the probable value of the use of the building and the ground greatly exceeded $50 per day and there were liable to be matters of loss, on account of delay, very difficult of ascertainment.

APPEAL from an order of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge.   *Affirmed.*

The appeal is from an order setting aside a verdict as unsupported by the evidence and granting a new trial.

Action to recover on contract for a balance claimed to be due plaintiff for marble furnished to defendant bank for use in constructing a brick and stone building in the city of Milwaukee, Wisconsin, and to recover the value of certain extras and also damages for breach of contract, in all $14,301.76 and interest.

June 1, 1911, the defendant bank contracted with defendants *Riesen* to provide all the material and perform all the work in preparing the site for the new structure and to do all the mason and concrete work required to complete such structure and to complete the work as to specified parts of the building in a specified number of days as to each part, subject to allowances for additional time for specified reasons and to complete the whole in 164 working days from the time the piling or any portion thereof was ready for the contractors to begin work.   To insure such completion or compensation for failure to do so, it was provided as follows:

"The contractors agree to pay the owners the sum of fifty dollars ($50) per day for each and every legal working day the work remains incomplete after the expiration of 164 working days from the time the piling or any portion thereof is ready for this contractor to begin his work" (referring to defendants *Riesen* who will be referred to as the mason contractors).

The contract for the mason work covered the setting of the marble with which the front and somewhat less than half of

the rear wall of the building, which was a four-story structure, were to be faced. The backing of the marble facing and the two side walls were to be of brick. There was a large amount of concrete work included in the mason's contract. The mason contractors sublet the setting of the marble to one Shand. It was the business of the defendant bank to provide the marble on the ground ready for the setting as needed. To provide for that it contracted with plaintiff to furnish and deliver the marble, the latter agreeing to do that by specified times as to specified units of the structure and all "so that the entire work must be completed not later than the first day of December, 1911, if the progress of the work at the building demands it," the plaintiff to pay "to the owner ten dollars ($10) for each and every day the work remains unfinished after the day set for its completion." Plaintiff further agreed as follows: "The mason contractor being under penalty of fifty dollars ($50) per day to complete this contract by a certain date, this contractor agrees to assume the responsibility for this penalty in case he delays the mason in completing his work according to the terms of his contract." (The word "this" after the word "complete" was evidently inadvertently used for the word "his," the contract referred to being the mason's contract.)

Plaintiff in its complaint claimed that it fully performed all the obligations of its contract as written except as the bank consented otherwise or prevented performance by its fault.

The bank answered claiming that plaintiff breached its agreement as to the time for delivering the marble to the extent of 214 working days and, by appropriate allegations, counterclaimed on that account for the $10 per day stipulated in the contract. The bank further claimed that the breach aforesaid caused a delay of 110 legal working days in the completion of the mason's contract and counterclaimed for $5,500 damages under the provision of the contract on that subject. The *Riesens* were duly brought in so as to litigate the question as to all parties respecting the claim for damages

for delay in completing their contract. The bank demanded judgment upon its counterclaim, against plaintiff, for $2,200, and against it and the *Riesens* for $5,500. The pleadings in the whole raised the issues covered by the special verdict hereafter quoted.

There was pretty conclusive evidence that there was considerable delay in furnishing the marble as agreed upon.

It was, as the trial court held, practically agreed upon the trial that the specified dates for delivery of the marble were conditional upon the progress of the work at the building demanding deliveries.

The cause was submitted to the jury for a verdict. The following are the questions and answers so far as any were given:

"(1) Did the plaintiff deliver the marble at the building as the progress of the work at the building demanded? *A.* Yes.

"(2) If you answer the first question 'No,' then answer this question: Was the plaintiff prevented from delivering the marble at the building as the progress of the work demanded, by the acts of the defendant bank, its agents or employees? *A.* ———.

"(3) If you answer the second question 'No,' then answer this question: Were the defendants, *Paul Riesen's Sons,* delayed beyond May 1, 1912, in completing their contract by the failure of the plaintiff to deliver the marble as the progress of the work at the building demanded? *A.* ———.

"(4) If you answer the third question 'Yes,' then answer this question: For how many days after May 1, 1912, exclusive of Sundays or holidays, were the defendants *Paul Riesen's Sons* delayed in completing their contract, by the failure of the plaintiff to deliver marble as the progress of the work at the building demanded? *A.* ———.

"(5) Was the completion of the *Riesen* contract delayed by the breaking of the north column base on December 13, 1911? *A.* Yes.

"(6) If you answer the fifth question 'Yes,' then answer this question: For how many days, exclusive of Sundays and

holidays, was the completion of the *Riesen* contract delayed
by the breaking of the north column base?   *A.* Fifty-four
days.

"(7) Was the delivery of the marble as the progress of
the work at the building demanded, delayed by the breaking
of the north column base on December 13, 1911?   *A.* No.

"(8) If you answer the seventh question 'Yes,' then an-
swer this question: For how many days, exclusive of Sun-
days and holidays, was the delivery of the marble, as the
progress of the work at the building demanded, delayed by
the breaking of the north column base?   *A.* ———."

The court set the verdict aside and granted a new trial
upon the ground that the first question called for an answer
as to whether plaintiff delivered the marble at the building
as the progress of the work of setting it demanded, particu-
larly the work which plaintiff was required to do under its
contract; that it referred to deliveries as the marble setters
were ready to use it; that it did not have reference to com-
pletion of the building as a whole which was intended to be
covered by the third question and that the jury misunder-
standing the matter answered the question upon the theory
that it referred to whether plaintiff delivered the marble as
the work of constructing the building as a whole demanded;
that if the mason contractors were delayed in the marble work
by failure of the plaintiff to deliver marble so as to keep the
marble setters employed but not the work as an entirety,
then there was a delivery as the progress of the work at the
building demanded, and so made a finding which was unsup-
ported by the evidence as applied to the question as it should
have been understood.   The court remarked:

"I have examined the record carefully and can find no evi-
dence to show there was a delivery of the marble in substan-
tially the order in which it was required by the marble setters.
The evidence is replete with instances of delay on the part of
plaintiff.   Twice the marble setters were obliged to suspend
work owing to the failure of the plaintiff to make deliveries.
The photographic charts and written admissions on the part

of the plaintiff, all show failure on its part to make deliveries under the terms of the contract."

The court further remarked:

"The court and counsel must bear the responsibility of another trial being required. All were agreed that it was necessary to submit the first question to the jury. At the time of drafting the verdict, a request for the submission of that question came from all sides. On reflection, it is apparent that it should never have been submitted. It resulted in the jury making a finding unsupported by any evidence."

For the appellant there were briefs by *Flanders & Fawsett,* attorneys, and *Charles F. Fawsett,* counsel, all of Milwaukee, and oral argument by *Charles F. Fawsett.*

For the respondents there was a brief by *Upham, Black, Russell & Richardson* of Milwaukee, attorneys for the *Marshall & Ilsley Bank,* and *Aarons & Niven* of Milwaukee, of counsel, and by *Lines, Spooner & Quarles* of Milwaukee, attorneys for *Paul Riesen's Sons.*

The following opinion was filed November 13, 1917:

MARSHALL, J.    Did the trial court commit error in construing the contract and the first question of the special verdict? That is the vital matter to be considered. We incline to the view that it did not, and shall only briefly discuss the subject. There is really very little which can be helpfully said about it. Evidently from the trial court's opinion, after verdict, and its instructions, it regarded the question, at the outset, the same as when it made the order complained of.

The bank purposed securing delivery of the marble for the structure so the entire work could be completed not later than the 1st day of December, 1911, if the progress of the work at the building demanded it. It is considered that the words "progress of the work at the building" refer to the particular work which was the subject of the contract, *i. e.* the marble work. It is hardly reasonable to suppose that it was left for

appellant to time deliveries of marble with reference to progress of work under the mason's contract as an entirety so that if, in its judgment, whenever there was work under such contract which could be done, so delay in delivery of marble would not work real prejudice to the mason contractors, there might be any amount of such delay. Had the parties so intended they would, doubtless, have used different language.

The work of setting the marble was an important part of the work at the building, so, in any view of the matter, whenever the mason contractors were ready to use marble, the progress of the work at the building demanded it, and failure to have marble at hand for such use was a breach of the.very letter of the agreement. In the clause "the contractor agrees to pay the owner ten dollars ($10) per 'day for each and every day the work remains unfinished after the day set for its completion," "work" is synonymous with the same word in the preceding paragraph, including its use in the clause "if the progress of the work at the building demands it." The day specified for completion of the job clearly refers to the marble feature subject to the demands of the progress thereof.

The bank was under obligation to provide the marble for use by the mason contractors. But it was agreed in the contract that the bank should provide all labor and material essential to the conduct of the work, not included in the contract, but that it should be deemed to have satisfied such agreement by entering into contracts, in substantially the form of the mason contract, with other contractors selected by it, for the furnishing of such labor and material, so as to be exempt from any liability for any fault or neglect of any such contractors or for any omission or delay whatever not caused by its personal act. So it was evidently deemed by the bank essential that under such provision it should contract for the marble to be delivered at the building as fast as the mason contractors were ready therefor, regardless of

whether delay in delivery of marble necessarily caused delay in the mason work as a whole, and to that end contracted with plaintiff as it did, taking the precaution to provide for $10 per day to be paid by plaintiff for each and every day its work should remain unfinished after the day set for its completion. That is entirely distinct from the $50 per day feature of the mason's contract which was assumed by plaintiff in case, by its fault, such feature became operative. It was entirely feasible for the $10 per day feature to become operative and there be no valid claim under the $50 feature. With the view indicated, the trial court submitted the first question as covering the first matter and the third as covering the second.

We have examined, with care, the briefs of counsel, but do not think best to greatly extend this opinion, as would be required to review in detail the suggestions therein. None of them have escaped our notice, nor have been passed over without due attention.

As indicated, our conclusion is that the trial court correctly construed the marble contract and that the jury misunderstood the first question resulting in a verdict which is wholly unsupported by the evidence, since, as we read the pleadings and evidence, it conclusively appears that marble was not always furnished as the mason contractors were ready to use the same; that there was such delay that the subcontractor, having the work of setting the marble, was at times entirely out of material when the progress of the work required it. The verdict was contrary to law as well as contrary to the evidence, so it was properly set aside as a matter of right and not in the court's discretion.

The verdict left unsolved the question of whether the fault of appellant delayed the mason contractors beyond May 1, 1912, in completing their contract, in respect to which there was a conflict in the evidence. So, notwithstanding it is very unfortunate that a new trial must be had, as the trial court

suggested, there does not seem to be any way of avoiding it, unless the contention of counsel for appellant is correct that it is entitled to judgment for the balance of the contract price, regardless of the verdict, upon the ground that it does not appear affirmatively that the bank was damaged by the mere delay.   Counsel rely on the doctrine of *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 135, 81 N. W. 136.   That did not involve any such feature as we have here.   Where there is such a feature and the parties intended to agree upon liquidated damages, it is the duty of the court to enforce it though it may appear somewhat harsh.   Parties have a right to make harsh provisions in their contracts if they see fit. The nature of the provision in that regard merely bears on the question of whether they intended to provide for liquidated damages or a mere penalty which would be limited to actual damages.   *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490; *J. G. Wagner Co. v. Cawker,* 112 Wis. 532, 88 N. W. 599; *Davis v. La Crosse H. Asso.* 121 Wis. 579, 99 N. W. 351.   The fact that the $50 per day feature of the mason's contract is called a penalty in the marble contract is not controlling.   It is not so called in the mason's contract. There the contractor specifically promised "to pay to the owner fifty dollars per day for each and every legal working day the work remains incomplete after" a specified time.   So far as mere words go, that language pretty plainly indicates that the parties intended to provide for liquidated damages. In any event, the real intention is what governs.   Circumstances may clearly indicate that what parties called liquidated damages, they intended as a penalty, or what they called a penalty they intended as liquidated damages.   That subject is fully discussed in the cited cases.   In a case of this sort, the probable consequences of delay, from the standpoint of the parties at the time of making the contract, is a very persuasive indication of what they intended.   Where delay would probably be attended with very little loss as com-

pared with the sum mentioned in the contract, and the actual damages could probably be very easily ascertained, the court would be inclined to the view that the parties intended to provide for a mere penalty, though they used the words, as in this case. On the other hand where the probable loss would be much in excess of the amount mentioned, the court would incline to the view that liquidated damages were intended to be provided for, though the parties used the term "penalty," and especially where the actual damages would be difficult of ascertainment. In this case the probable value of the use of the building and ground greatly exceeded $50 per day and there were liable to be matters of loss, on account of delay, very difficult of ascertainment. On the whole, it is considered that the $50 feature of the mason's contract was intended to provide for liquidated damages and, obviously, what was there intended was carried into the marble contract. The $10 feature thereof was, doubtless, likewise so intended.

*By the Court.*—The order is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 5, 1918.

OWEN, J., took no part.