ELMOR REALTY COMPANY, Respondent, vs. COMMUNITY THEATRES, INC., imp., Appellant.

*February 9—May 10, 1932.*

*Fred R. Wright* of Milwaukee, for the appellant.

For the respondent there were briefs by *Rix, Barney & Kuelthau* of Milwaukee, and oral argument by *G. Carl Kuelthau.*

The following opinions were filed March 8, 1932:

FOWLER, J. The defendant Theatre Company demurred to the complaint on the ground of insufficiency of the facts stated to constitute a cause of action. From the order of the circuit court overruling the demurrer the defendant appeals.

It appears from the complaint that plaintiff's assignor executed a lease of a theatre in Milwaukee for the term of five years at a rental of $250 per month to the defendants Genz and Di Leo, who assigned to the defendant Theatre Company. The assignees are by the terms of the lease bound by its covenants. When three and a half years of the term expired the defendant company abandoned the premises and refused to pay further rent. The plaintiff thereupon "re-entered said premises and took possession thereof for the defendants" and "made diligent effort to relet said premises in order to minimize damages," but was only able to rent them for two months for $300. At expiration of the term

plaintiff brought suit to recover the unpaid rents, less the $300. The lessee covenanted to pay the monthly rental in advance on the 10th of each month, and to obey all the ordinances of the city and all lawful orders of the city's health officers. The lease contained provisions as follows:

"And the lessor further agrees to allow the lessees the sum of three hundred seventy-five ($375) dollars, said amount to pay for the last month and one-half's rent of this lease. And the lessees have deposited with the lessor the sum of one thousand ($1,000) dollars, said amount being deposited with the lessor as a guaranty that they will fulfil the terms and conditions of this lease, said one thousand ($1,000) dollars, together with the three hundred seventy-five ($375) dollars, to be in full payment for the last five and one-half months' rent under this lease.

"It is further covenanted and agreed by and between the lessor and the lessees that should the lessees fail to fulfil the terms and conditions of this lease that the one thousand ($1,000) dollars cash money deposited with the lessor as guaranty shall be forfeited and become the property of the lessor without any notice whatsoever and this lease shall be null and void."

One thousand dollars was advanced to the lessor on execution of the lease in accordance with the provision quoted.

The appellant contends (1) that by the provision of the lease quoted, when the defendant vacated the premises the $1,000 stood as liquidated damages for its violation of the terms of the lease, and the lease was thereby terminated and the defendant was thereby released from liability for rents. (2) That the conduct of the plaintiff in reletting constituted an acceptance of a surrender of the lease by the defendant, and terminated the lease and defendant's liability thereunder.

(1) Several decisions of this court are cited by appellant to the effect that where an amount is stipulated in a contract as liquidated damages the courts will treat it as such unless it is grossly in excess of the actual damages or has no rela-

tionship thereto. We recognize this as a correct rule. But here the parties have not so stipulated. The term "liquidated damages" is not used. The harsh term "forfeiture" is used instead. The sum by the last paragraph quoted was to be "forfeited" in case the lessee "should fail to fulfil the terms and conditions" of the lease. Had the lessee "failed" to pay a month's rent on the day stipulated, or unwittingly violated an ordinance of the city or an order of the city health offi-cers, a court would not permit the lessor to terminate the lease therefor and retain the $1,000 as liquidated damages. This would be a forfeiture, such as equity would relieve against. 16 Ruling Case Law, p. 1146; note 69 L. R. A. 884. The terms of the lease respecting forfeiture would apply as clearly to such a violation of the terms of the lease by the defendant as to a violation by abandonment.

"The term 'forfeiture' imports a penalty; it has no neces-sary or natural connection with the measure or degree of injury which may result from a breach of contract, or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superinduced. Unless, therefore, it shall have been ex-pressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced where this can be done in its real character, viz. that of a penalty." *Van Buren v. Digges,* 11 How. (52 U. S.) 461, 477.

It is also quite true, as appellant claims, that the parties might lawfully stipulate that should the lessee abandon the premises before termination of the lease the $1,000 should stand as liquidated damages. But it seems to us sufficient to say to meet this suggestion that the parties did not so stip-ulate, and that it is to be presumed that had they intended so to stipulate they would have used language appropriate to express their intention. The stipulation that the $1,000 should stand as payment of the rent for the last five and a

half months of the term negatives the idea that it should stand as liquidated damages in case the lessee should vacate the premises.

It is also true as suggested by appellant that the lease provides that upon a failure "to fulfil any of the terms or conditions of the lease . . . this lease shall be null and void." But this does not imply that the plaintiff cannot recover rents under it. This language of itself is a provision for forfeiture of the lease. It does not detract from its force as such that it is provided in immediate connection that the $1,000 shall also be forfeited by the lessee's failure to perform. The provision is for forfeiture of both the $1,000 and the lease. "The construction of provisions for forfeiture of a lease for non-performance of conditions by the lessee is that the lease is voidable only at the election of the lessor and is not rendered absolutely void, though it is provided that it shall be null and void in case of such breach." 3 Words & Phrases (1st series) p. 2894, citing *Small v. Clark,* 97 Me. 304, 54 Atl. 758. It is a general rule that a provision in a lease that it shall become void for non-performance of its term renders it optional with the lessor to declare it void, "and if he does not avail himself of it (the right to terminate) the term will continue, for the lessee cannot elect that it shall cease or be void;" and "the effect of a condition making a lease void upon a certain event is to make it void at the option of the lessor only, in cases where the condition is intended for his benefit, and he actually avails himself of the privilege." 2 Taylor, Landlord & Tenant, pp. 82, 83. "The rule now recognized there [in England] and most parts of this country is that even though the instrument of lease provides that the lease shall become void or terminate upon the breach of a stipulation by the lessee, such a breach does not terminate the tenancy until the landlord has in some way signified his election that it shall do so." 2 Tiffany, Land-

lord & Tenant, 1369. To this effect are *Smith v. Sinclair,* 59 N. J. L. 84, 34 Atl. 943; *Bowman v. Foot,* 39 Conn. 331; *Almy v. Greene,* 13 R. I. 350; *Trask v. Wheeler,* 7 Allen (89 Mass.) 109.

It is to be noted that the provision of the lease quoted declares that the $1,000 was "deposited with the lessor as a guaranty that they (the lessees) will fulfil the terms and conditions of this lease." The provision was thus inserted for the benefit of the lessor. It was inserted for the purpose of making the lessee fulfil his obligations under the lease, one of which was to pay rent for the full term. To permit the lessee to terminate the lease by abandoning the premises would be to permit him to take advantage of his own wrong. The reason for and purpose of the adoption of the English rule above referred to was to prevent the lessee from so doing, which the former English rule permitted. "The right to declare a forfeiture of a lease is one created by stipulation in the lease for the benefit of the lessor, and he is not obliged to invoke it. He has the choice whether to hold the lessee responsible in damages for breach of covenant or to declare the lease at an end for breach of condition." *Mohawk Co. v. Bankers Surety Co.* 162 Wis. 272, 276, 156 N. W. 154; 35 Corp. Jur. p. 1065; note 69 L. R. A. 884 and cases cited.

(2) The contention under this head is based upon the proposition that there is no allegation in the complaint that the re-entry of the lessor for the purpose of reletting to minimize damages was evidenced by "formal notice or by any other proper means constituting such unequivocal act as would amount to an election" to re-enter for that purpose as it is contended is necessary under *Weinsklar Realty Co. v. Dooley,* 200 Wis. 412, 228 N. W. 515, where it is said that "the mere entry and taking possession of the premises (by the landlord) for the purpose of leasing the same does not constitute such an election." We again quote from the

complaint that "the plaintiff re-entered said premises and took possession thereof for the *defendants*" and "made diligent effort" to relet them "in order to minimize damages." On demurrer allegations of a pleading are liberally construed in favor of its support. So considering the allegation quoted, we construe it as alleging something more than "mere entry and taking possession . . . for the purpose of leasing." The allegation that re-entry was made "for the defendant" implies that it was made for the purpose of reletting for him to minimize his damages. The allegation is one of fact, not of law. Whether the complaint would be subject to motion to make more definite and certain by setting forth the facts by which re-entry for the defendant was evidenced we need not determine as such motion has not been made.

*By the Court.*—The order of the circuit court is affirmed.

Owen, J. (*dissenting*). The effect resulting from the use of a telescope depends upon the end through which one looks. By the inverse application of a wholesome rule, it seems to me that the opinion of the court arrives at an incongruous result, and utterly fails to give effect to a simple, plain, and express agreement of the parties.

A great deal is said in the opinion about a forfeiture, but no one in this case is seeking to enforce a forfeiture. Neither is any one seeking to be relieved from a forfeiture. The facts stated in the complaint in this case disclose an executed transaction between the parties, and I am utterly unable to see what principles relating to forfeitures have to do with the rights of the parties to this action.

The principle stressed in the opinion is that an ordinary stipulation in a lease providing for a forfeiture in case of a breach of any of the covenants of the lease, is placed there for the benefit of the lessor, and he has the option of enforcing the forfeiture or ratifying the breach. The provision in this lease which controls the decision is of a different

character. It goes much further, and, to properly construe it, we should place ourselves in the position of the parties at the time the lease was drawn.

The lease in question was for a term of five years, at a rental of $250 per month. It is apparent that the lessor required some security that the rent would be paid. It was agreed between the parties that this security should consist of a deposit of $1,000 by the lessees with the lessor as a guaranty that the conditions of the lease would be fulfilled. It was then expressly agreed, in language containing no ambiguity whatever, that if "the lessees fail to fulfil the terms and conditions of this lease, that the $1,000 cash money deposited with the lessor as guaranty shall be forfeited and become the property of the lessor, without any notice whatsoever, and this lease shall be null and void." I can see no reason why this covenant thus solemnly and deliberately made between the parties should not be enforced, especially in view of the fact that it is an executed transaction, and the lessees are not seeking to have it treated as an unconscionable penalty, nor to be relieved therefrom. The lessor received this money into his keeping under the terms of this covenant. This covenant constituted the only right which it had to it. When the premises were abandoned it kept the money. It kept it under the conditions of the covenant, which constituted the only right it had to keep it. The covenant under which it received it and kept it expressly provided that it should become its property in case of the failure of the lessees to fulfil the terms and conditions of the lease, and that the lease should be entirely void. I can entertain no doubt that this was the intention of the parties at the time the lease was entered into, and I can see no reason why a court should decline to give effect to such an agreement.

The opinion of the court seems to proceed on the theory that because circumstances may be conceived under which a forfeiture would not be enforced, that therefore the lessees

cannot submit to a forfeiture. This is the inverse application of a rule for which application there is no authority. Courts will not apply a rule of law intended for the protection of a class to the injury of the class which the rule was designed to protect. *Washington County v. Groth,* 198 Wis. 56, 223 N. W. 575. That equity might relieve the lessees under certain circumstances from the so-called forfeiture furnishes no ground for saying that the lessor may enforce rights greater than those it agreed to receive.

But if the rights of the parties depend upon whether the provision we are considering is one for a penalty or liquidated damages, I am clearly of the opinion that it is one for liquidated damages. The conclusion of the court that the provision provides for a penalty seems to be based upon the use of the word "forfeiture." Such provisions are to be construed the same as any contract, to give effect to the intention of the contracting parties. The use of the expression "stipulated damages" or "penalty" in such connection is not conclusive upon the question of whether the provision is one for a penalty or liquidated damages. "The nature of the provision in that regard merely bears on the question of whether they intended to provide for liquidated damages or a mere penalty which would be limited to actual damages." *Grant M. Co. v. Marshall & Ilsley Bank,* 166 Wis. 547, 165 N. W. 14. In all such cases it is the duty of the court to ascertain the intention of the parties notwithstanding the use of language which in and of itself might indicate superficially that it was intended to be the one or the other.

But the use of the word "forfeiture" in this covenant, I submit, does not indicate whether the parties intended the $1,000 to be paid as liquidated damages or as a penalty. It seems to be conclusively assumed, because the provision is that the $1,000 shall be "forfeited," that a penalty was intended. I think the word "forfeited" is appropriately used

whether a penalty or liquidated damages was intended. The intent of the parties was that the $1,000 deposited with the lessor should become its property in case of a breach of any of the covenants of the lease. What better word could be used to indicate that intention than the word "forfeiture?" It seems to me that it is just as consistent that it should be forfeited as liquidated damages as that it should be forfeited as a penalty.

When we place ourselves in the position of the parties, it is clear to me that liquidated damages and not a penalty was in the minds of both parties. The lessor apparently had in mind that the lessees might not be able to go through with the lease and pay the rent. It was evidently apprehensive upon this question. It appears that by the payment of $1,000 it would have an advance payment of rent for a period of four months, which period it was thought would enable it to re-lease the premises. The intention of the parties seems to me plainly to be this: in case the lessees could not carry out the conditions of the lease and pay the rent, the $1,000 as security was to become the absolute property of the lessor, in consideration for which payment the lease was to be terminated. If this was the situation, then the lessor could not terminate the lease at its option. It had agreed with the lessees to terminate the lease upon the payment by the lessees to the lessor the sum of $1,000. The lessees paid this sum and are entitled to the benefit of their contract.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice NELSON concur in the foregoing dissenting opinion

A motion for a rehearing was denied, with $25 costs, on May 10, 1932.