Keehn and others, Respondents, vs. Saxe and another, Appellants.

*May 1—September 10, 1935.*

For the appellant John E. Saxe there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *E. H. Hallows* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

For the appellant United States Fidelity & Guaranty Company there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott.*

For the respondents there was a brief by *Norman J. Baker,* and oral argument by *Norman J. Baker* and *Norman L. Baker,* both of Milwaukee.

The following opinion was filed June 4, 1935:

MARTIN, J. In 1923 plaintiffs leased certain property on Second street in the city of Milwaukee to the defendant, John E. Saxe, for a term of ninety-nine years. A consideration for the leasing of said premises required lessee to erect or cause to be erected, constructed, and completed upon said demised premises a new, modern, fireproof building of not less than five stories in height and costing not less than $100,000, to be finished and ready for occupancy on or before the 1st day of November, 1929; and on or before said date to fully pay the entire cost and expense thereof, so that the same shall be fully paid for and be free and clear from all liens of every kind and character for labor, services, materials, machinery, appliances, or other things entering into or furnished for the erection and completion of said building. Simultaneously with the execution of said lease, lessee executed a surety bond in the sum of $25,000 conditioned for

the erection and completion of said building on said leased premises before the 1st day of November, 1929, and the payment therefor in full within said time, and for the payment of the rent and other sums of money payable to said lessors and the performance of the covenants, agreements, and conditions on the part of the lessee to be kept and performed, until the completion of and payment for said building.

In accordance with the lease, said bond was further conditioned that if default be made in the payment of any instalment of the rent or in the payment of any taxes or assessments or any other money agreed to be paid by the lessee; and, further, that if during said period default be made in any other covenant or agreement by the lessee to be kept and performed, then and in any such case, whether the lessors shall or shall not re-enter upon said demised premises, such default may at the option of the lessors be treated as an abandonment by the lessee of the demised premises and taken to be a breach of the condition of said bond to fully complete the erection and payments for said building on said premises before the 1st day of November, 1929, to all intents and purposes the same as though the period within which such building shall be completed and paid for had fully expired by lapse of time, and said building had not been erected or completed, and said sum of $25,000 shall become immediately due and payable. When the lease was made, there were two buildings on the premises which will be referred to as the north and the south buildings. Upon execution of the lease and the $25,000 bond mentioned, the lessee was authorized to raze the north building.

The lease further provided that before the commencement of the dismantling or razing of the south building and before the commencement of the construction of any building on any part of the demised premises, lessee was required to furnish an additional surety bond in the sum of $10,000, conditioned for the erection and completion of such new building

on or before November 1, 1929, and the payment therefor in full before said date, and further conditioned for the payment of rent and other sums of money to said lessors and the performance of all covenants, agreements, and conditions on the part of the lessee to be paid, kept, and performed until the completion of and payment for said building.

Up to November 1, 1929, the lessee had made no move toward the erection of the new building other than having razed the old north building. The second or $10,000 bond had not been given, and the south building was still standing. The defendant Saxe negotiated with the plaintiffs for an extension of time to November 1, 1933, within which to erect the new building provided for in the lease. An extension agreement was entered into on October 25, 1929. Among other things, it provided for the payment of $6,000 in four annual instalments payable as rent, in addition to the specified rental in the lease; also for an increase of the penalty of the second bond originally fixed at $10,000 to $25,000. The defendant, United States Fidelity & Guaranty Company, surety on said bond, consented that the first bond for $25,000 be continued in force until November 1, 1933, and executed the second bond in the sum of $25,000 in lieu of the $10,000 bond mentioned in the original lease, conditioned like the first bond, and soon thereafter the south building was torn down. After the south building was razed the property was used by defendant Saxe as a parking station in conjunction with three other lots. One-fourth of the income from such use was allocated to plaintiffs' property after expenses of operating the parking station had been paid.

The first bond for $25,000, dated November 15, 1923, contains the following provisions:

"But if the lessee shall fail or neglect to begin the erection of said building on or before the date for its completion as hereinbefore set forth, or on or before the date of the exercise by the lessors of lessors' option last above mentioned,

then and in that case the liability of said surety shall be the full sum of $25,000, which sum shall in such event be due and payable to the lessors *as and for liquidated damages, which are hereby liquidated and fixed as damages and not as a penalty."*

While both surety bonds are conditioned for the erection of the new building by November 1, 1933, and payment of the rent and taxes until performance of the building covenant, the first bond expressly provided that liquidated damages for failure to commence erection of the building by November 1, 1933, were stipulated to be $25,000, and if the building was commenced but not completed as provided in the lease, not exceeding $25,000 was to be applied toward completion of the building. The second bond has no provision as to liquidated damages and no limitation as to the amount to be used to complete the building.

The defendant Saxe having failed to commence the erection of the new building as provided for in the lease, this action on the bonds was commenced on November 27, 1933. Upon the trial it was stipulated that the delinquent taxes, rent, and accrued interest to November 1, 1933, amounted to $14,847.67. Mr. Saxe was still in possession of the leased premises when this action was commenced, and also at the date of the trial. The plaintiffs have not exercised their right of re-entry under the terms of the lease, and still hold the defendant Saxe upon his covenant to pay rent pursuant to the terms of the lease, accepting on account the income received from the property used as a parking station. This action is one on the two bonds to which reference has been made to recover defaults in rent, taxes, and damages accrued by reason of the nonerection of the building by November 1, 1933.

The sole question here is the correct measure of damages to which plaintiffs are entitled. The trial court held that the

proper measure of damage is the value of the security which has been lost by the lessee's failure to erect the building. The trial court said:

"It was shown by the testimony that if the new building had been erected on the premises on or before November 1, 1933, it would furnish security for probably at least $5,000 net income a year. Without the building, the vacant land would furnish security for a net income of probably no more than $500 a year. So the loss in value of security suffered by plaintiffs is approximately $4,500 a year. While it is probable that a building of the type of construction agreed upon would have an economic life of more than thirty years, that limited period will be assumed here in order to avoid speculative elements in the computation of damages. The present value of $1 per annum for 30 years, compounded at 6% is $13.7648; at 5% it is $15.3724 (Glover & Carver tables). Conservatively taking the lesser amount . . . as a basis, the present value of the $4,500 per annum for 30 years, compounded at 6%, is $61,841.60. (For . . . 25 years, at 6%, it is $57,524.85.) The element of additional rent at the fixed expiration of the term (or upon prior termination) by the lessors' acquisition of the then value of the building is considered too speculative for computation as damages."

The trial court concluded: "As the damages for the deprivation of the security of the building alone exceed $50,000, the plaintiffs are entitled to judgment for the recovery of $50,000 on the two bonds sued upon, together with interest from November 1, 1933."

We cannot approve the foregoing as the proper measure of damages applicable in this case. The parties agreed in no uncertain terms that if the lessee failed or neglected to begin the erection of the building provided for in the lease on or before the date for its completion, then and in that case the liability of the surety "shall be the full sum of $25,000, which sum shall in such event be due and payable to the lessors as and for liquidated damages, *which are hereby liquidated and fixed as damages and not as a penalty.*" Where the damages

are difficult of ascertainment, as would be the case here for lessee's failure to furnish the building called for in the lease, this court looks with favor upon the practice of agreements as to liquidated damages. *Grant Marble Co. v. Marshall & Ilsley Bank,* 166 Wis. 547, 165 N. W. 14; *Schneider v. Allis-Chalmers Mfg. Co.* 196 Wis. 56, 219 N. W. 370; *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389, 175 N. W. 796.

In *Sheffield-King Milling Co. v. Jacobs, supra,* this court, at page 403, said:

"Modern business is so managed as to avoid litigation; the tendency is away from litigation—a tendency which should be encouraged in all fair and legitimate ways because it is conducive to the general welfare. Time and effort consumed in litigating questions of damages generally result in substantial financial loss to both sides. Stipulations of parties, therefore, which establish a plain, simple rule of damages, having a just and fair relation to the subject matter of the contract, in cases where the ascertainment of actual damages is difficult, ought, in the public interest, to be given legal effect."

In *Grant Marble Co. v. Marshall & Ilsley Bank, supra,* this court said, at page 555:

"Where there is such a feature and the parties intended to agree upon liquidated damages, it is the duty of the court to enforce it though it may appear somewhat harsh. Parties have a right to make harsh provisions in their contracts if they see fit. The nature of the provision in that regard merely bears on the question of whether they intended to provide for liquidated damages or a mere penalty which would be limited to actual damages."

The respondent contends that, assuming the second bond is unliquidated, they have proved actual damages for failure to erect the building called for in the lease far in excess of the amount of both bonds. The difficulty with this contention is that of the $50,000 surety coverage, $25,000 is allocated by agreement of the parties as liquidated damages for

nonerection of the building. Having reached the conclusion that the plaintiffs' recovery for the failure of the defendant Saxe to furnish the building required by the lease is limited to the amount of the agreed liquidated damages, namely $25,000, the only other elements of damage are the items of defaulted rent, taxes, and accrued interest to November 1, 1933. Upon the trial these items were stipulated to be $14,847.67. It follows that the judgment must be modified accordingly.

*By the Court.*—The judgment of the circuit court is modified by reducing the amount thereof from $52,641.66 to $39,847.67 without prejudice to plaintiffs' right, if any, to recover for rent, taxes, and interest accruing subsequent to November 1, 1933. As modified, judgment is affirmed; appellants to have costs on this appeal.

A motion for a rehearing was denied, with $25 costs, on September 10, 1935.