TOLLEFSON, Appellant, vs. GREEN BAY PACKERS, INC., Respondent.

*January 10—February 7, 1950.*

For the appellant there was a brief by *Hanaway & Byrnes*, attorneys, and *Alex Wilmer* of counsel, all of Green Bay, and oral argument by *Charles T. Hanaway*.

For the respondent there was a brief by *Martin, Clifford, Dilweg, Warne & Duffy*, and oral argument by *G. F. Clifford* and *George P. Polnaszek*, all of Green Bay.

GEHL, J. Plaintiff, Charles Tollefson, a professional football player, had played football with defendant, Green Bay Packers, Inc., in the years 1944 and 1945. On May 4, 1946,

the parties entered into a contract, which is a printed form with insertions in the handwriting of E. L. Lambeau, manager of defendant corporation. The pertinent provisions of the contract are these:

"The Green Bay Packers herein is called the club, and Chas. Tollefson, of Green Bay, Wis. herein is called the player.

"The club is a member of the National Football League. As such, and jointly with the other members of the league, it is obligated to insure to the public wholesome and high-class professional football by defining the relations between club and player, and between club and club.

"In view of the facts above recited the parties agree as follows:

"1. The club will pay the player a salary for his skilled services during the playing season of 1946, at the rate of $300 dollars for each regularly scheduled league game played, provided he has not been released by the club prior to the playing of the first league game. For all other games the player shall be paid such salary as shall be agreed upon between the player and the club. As to games scheduled but not played, the player shall receive no compensation from the club other than actual expenses.

"Minimum $3,600 for season.

"2. The salary above provided for shall be paid by the club as follows:

"Seventy-five per cent (75%), after each game and the remaining twenty-five per cent (25%), at the close of the season or upon release of the player by the club.

"3. The player agrees that during said season he will faithfully serve the club, and pledges himself to the American public to conform to high standards of fair play and good sportsmanship. . . .

"7. This contract may be terminated at any time by the club giving notice in writing to the player within forty-eight (48), hours after the day of the last game in which he has participated with his club. . . .

"13. In case of dispute between the player and the club the same shall be referred to the commissioner of the Nation-

al Football League, and his decision shall be accepted by all parties as final.

"14. Verbal contracts between club and player will not be considered by this league, in the event of a dispute."

The provision "Minimum $3,600 for season" was inserted in the printed form in the handwriting of the manager, E. L. Lambeau. Plaintiff, Tollefson, practiced with the team, appeared in an intersquad game, and played in three practice games and a regular league game. He also appeared in uniform and on the bench for the Los Angeles Rams game, the second scheduled.

Plaintiff was not given formal notice of his discharge; it came to him by an article published in a newspaper after the second league game played, reporting that waivers had been asked by the defendant upon him. He understood that a request for waivers and action taken by defendant, as reported in the newspaper, meant that he had been discharged. Following his release he reported for practice on a number of occasions, obviously as an offer to continue to perform. On those occasions the manager was present but he had no conversation with him. On the second or third day of practice after his release, while on the practice field, he talked with one of the coaches, but the subject of his conversation does not appear.

He was paid $900 for the three practice games played and the two league games played before his discharge. He seeks to recover $2,700, the difference between the amount paid him and the $3,600 provided in the inserted provision.

Defendant now makes no claim that plaintiff should have proceeded under the provisions of paragraph 13 of the complaint.

Plaintiff submitted his case solely upon the theory that the provision, "Minimum $3,600 for season," entitles him to payment of that amount regardless of full performance by him. The trial court disagreed and therefore granted defendant's motion for nonsuit.

Plaintiff contends that the inserted provision "Minimum $3,600 for season," which will be referred to hereinafter as the "minimum clause," entitles him to that amount. Defendant does not agree and in its answer sets up the additional defense that plaintiff was discharged for failure to properly perform.

Unquestionably, absent the minimum clause, under the provisions of paragraph 7 of the contract, the defendant might have released plaintiff at any time, with or without cause. Although it was not definitely known when the contract was made how many practice games would be played, the amount stated in the minimum clause appears to have been determined from the fact that it would at least approximately compensate plaintiff for the games scheduled and planned to be played. If plaintiff had been permitted to perform fully he would have been entitled to the precise amount stated in the minimum clause. This, and the mere fact that it was inserted, would indicate that it was intended that it should serve some purpose. It is our view that its terms are inconsistent with the provisions of paragraph 7 of the contract. There is applicable the rule:

"Where written provisions are inconsistent with printed provisions [of a contract], an interpretation is preferred which gives effect to the written provisions." Restatement, 1 Contracts, p. 328, sec. 236 (e). See also 4 Williston, Contracts (rev. ed.), p. 3281, sec. 1143; *Atlanta Terra Cotta Co. v. Goetzler,* 150 Wis. 19, 136 N. W. 188.

If, as defendant contends, plaintiff would have been entitled to the $3,600 only in case he completed the season's play, there would have been no reason for the insertion of the minimum clause.

Before the contract was executed plaintiff and defendant's coach discussed the fact that the former had had an offer to play with another professional football team. No doubt that fact prompted plaintiff to insist upon some form of relative

security and induced defendant to agree that he should have it.

We conclude that the minimum clause must be construed to mean that, unless discharged for cause, plaintiff was entitled to the full sum of $3,600 whether he participated in the games played or not.

Defendant argues that, upon plaintiff's construction, even though plaintiff had not performed or offered to perform to the best of his ability, he might still have been entitled to the full amount of the minimum clause. That is not correct. An employer may discharge an employee for cause at any time without incurring liability even though the employee is engaged for a definite term as plaintiff was here. 35 Am. Jur., Master and Servant, p. 470, sec. 36.

We conclude that plaintiff was entitled to the amount stated in the minimum clause unless it were shown that there was cause for his discharge. Defendant was entitled to that defense. Plaintiff's motion for summary judgment was properly denied. The court was in error in granting defendant's motion for nonsuit.

*By the Court.*—The order denying plaintiff's motion for summary judgment is affirmed. The judgment granting defendant's motion for nonsuit is reversed, and the cause is remanded for a new trial.