Donald WASSENAAR, Plaintiff-Respondent-Petitioner,

v.

Theanne PANOS, d/b/a The Towne Hotel,
Defendant-Appellant.†

Supreme Court

*No. 81–1597. Argued February 4, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 357.)

† Motion for reconsideration denied, with costs, on May 3, 1983.

For the plaintiff-petitioner there were briefs by *Robert G. Dowling* and *Shneidman, Myers, Dowling & Blumenfield,* Milwaukee, and oral argument by *Robert G. Dowling.*

For the defendant-appellant there was a brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee, and oral argument by *James A. Walrath.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed May 6, 1982, reversing a judgment of the circuit court for Milwaukee county, Louis J. Ceci, Circuit Judge. The circuit court entered a judgment in favor of an employee, Donald Wassenaar, against his former employer, Theanne Panos, d/b/a The Towne Hotel, enforcing the stipulated damages clause in the employment contract and confirming a $24,640 jury award. The circuit court interpreted the stipulated damage clause in the contract as providing that in the event of wrongful discharge the employee was to be paid a sum equal to his salary for the unexpired term of the contract. The court of appeals reversed, holding the stipulated damages clause unenforceable as a penalty and remanding the cause to the circuit court for a new trial on the issue of damages only.

This court granted the employee's petition for review limiting the issue on review to whether the clause in the

employment contract stipulating damages is a valid and enforceable liquidated damages provision or is, as a matter of public policy, an unenforceable penalty. We use the term "stipulated damages" herein to refer to the contract and the term "liquidated damages" to refer to stipulated damages which a court holds to be reasonable and will enforce. This court also asked the parties to address the sub-issue of whether a liquidated damages clause in an employment contract may serve to eliminate the employee's duty to mitigate damages, a question the court of appeals did not address. We conclude that where the stipulated damages clause is a valid provision for liquidated damages, the doctrine of mitigation of damages is not applicable to determine the damages awarded the nonbreaching party. In this case we hold that the stipulated damages clause is a valid provision for liquidated damages, not a penalty, and that the employee's earnings after the breach do not reduce the damages award. Accordingly, we reverse the decision of the court of appeals and affirm the judgment of the circuit court.

The dispute centers on the stipulated damages clause of a written employment contract by which the employee-plaintiff, Donald Wassenaar, was hired as general manager of the employer-defendant, Towne Hotel. The employment contract is brief. It sets forth the employee's duties, his beginning salary, and his periodic pay increases. The contract further provides for a three-year term of employment beginning on January 1, 1977, renewable at the employee's option, and stipulates damages in case the employer terminates the employee's employment before the expiration of the contract. The stipulated damages clause in issue here reads as follows:

"IT IS FURTHER UNDERSTOOD, that should this contract be terminated by the Towne Hotel prior to its expiration date, the Towne Hotel will be responsible for

fulfilling the entire financial obligation as set forth within this agreement for the full period of three (3) years."[1]

The employer terminated Wassenaar's employment as of March 31, 1978, 21 months prior to the contract's expiration date. Wassenaar was unemployed from April 1, 1978, until June 14, 1978, when he obtained employment in a Milwaukee area hotel where he remained employed at least until the time of trial in May, 1981.

The employee sued for damages. The employer answered the complaint and as an affirmative defense asserted that the employee had failed to mitigate damages. In a pretrial motion to strike the employer's affirmative defense that the employee had failed to mitigate damages, the employee argued that mitigation was irrelevant because the contract contained a valid stipulated damages clause. The circuit court struck the employer's affirmative defense, ruling that the employee had no duty to mitigate damages, apparently inferentially ruling that the stipulated damages clause was valid.

After a trial on the remaining issues and in response to special verdict questions, the jury found that the person negotiating the contract on behalf of the employer was authorized as the employer's agent to enter into the employment contract and that the employer terminated the employment without just cause. The circuit court, over the employee's objection, submitted to the jury the question of what sum of money would compensate the employee for his losses resulting from the breach of the employment agreement.[2] The jury answered $24,640,

[1] The clause can be interpreted to provide that the employee will receive the entire salary for three years regardless of when the employment was terminated. We reject this interpretation of the clause, as did the employee and the circuit court.

[2] The circuit court submitted the following question to the jury and instructed the jury that the employee had the burden of proving compensatory damages:

which is the sum the employee had calculated as his damages on the basis of the stipulated damages clause of the contract, that is, his salary for 21 months, the unexpired term of the contract.

On review, the court of appeals characterized the question of whether a stipulated damages clause should be held void as a penalty because it fixes unreasonably large damages as a question of law to be determined independently by the reviewing court. It then scrutinized the stipulated damages clause and decided that the clause was void as a penalty. The court of appeals reached that conclusion reasoning that the amount of damages for breach of an employment contract could easily be measured and proved at trial and that the contractual formula fixing damages at full salary without considering how long the employee would need to find a new job or the probable earnings from substitute employment was unreasonable on its face. In its analysis, the court of appeals did not consider any facts other than the actual contract language and the black-letter law relating to the measure of damages for breach of employment contracts.

We agree with the court of appeals that the validity of a stipulated damages clause is a question of law for the trial judge rather than a mixed question of fact and law

"Question No. 5: What sum of money will compensate the plaintiff, Donald Wassenaar, for his losses resulting from the breach of his employment agreement?

"Answer: $24,640.00 (12 votes)."

The employee objected to inclusion of the damages question in the special verdict, arguing that once the circuit court had ruled on the validity of the liquidated damages clause the calculation under the clause could easily be done by the court. The employee was correct. Since the circuit court inferentially ruled that the stipulated damages clause was valid, the jury's function to determine damages was superceded by the agreement,

for the jury.[3] The validity of a stipulated damages clause is a matter of public policy, and as in other contract cases the question of contractual validity as a matter of public policy is an issue the trial judge initially decides.[4] But we disagree with the court of appeals that the label of "question of law" automatically relieves the trial court from its duty to consider evidence or gives the appellate court free rein in reviewing the trial court's decision.

Even though the trial court's conclusion regarding the validity of the stipulated damages clause is a legal con-

and special question number 5 was superfluous. Any error was, however, harmless. 5 Corbin, *Contracts*, sec. 1061, p. 353 (1964).

If the circuit court had invalidated the stipulated damages clause, the issue of damages would be for the jury. Restatement (Second) of Contracts, sec. 356, comment *a*, p. 157 (1979).

[3] *McConnell v. L.C.L. Transit Co.*, 42 Wis. 2d 429, 438, 167 N.W.2d 226 (1969); *Lake Geneva v. States Improvement Co.*, 45 Wis. 2d 50, 56, 172 N.W.2d 176 (1969); *United Leasing & Financial Services, Inc. v. R.F. Optical, Inc.*, 103 Wis. 2d 488, 492, 309 N.W.2d 23 (Ct. App. 1981); *Fields Foundation, Ltd. v. Christensen*, 103 Wis. 2d 465, 475, 309 N.W.2d 125 (Ct. App. 1981).

[4] McCormick, *Damages*, sec. 157, p. 622 (1935); cf. Corbin, *Contracts*, sec. 554B, p. 451–52 (1982 Supplement, pt. 1) (unconscionability is a question of public policy reserved to the judge); 6A Corbin, *Contracts*, sec. 1375, p. 10 (1962) (illegality is a question of public policy reserved to the judge).

It has been suggested that the issue of the validity of a stipulated damages provision be treated as a question of fact for the jury at the trial and as a fact issue in appellate review. This treatment could conserve judicial appellate resources. *See Layton Mfg. Co. v. Dulien Steel, Inc.*, 277 Ore. 343, 560 P.2d 1058, 1065 (1977) (Lent, J. concurring); *Dean Vincent, Inc. v. McDonough*, 281 Ore. 239, 574 P.2d 1096, 1101 n. 7, 1103 (1978). The Oregon court appears to hold that the defendant has the burden to prove unreasonableness. But if the defendant fails, and the jury must determine damages, it is unclear who has the burden to prove those damages.

clusion—a policy judgment—that legal conclusion will frequently be derived from a resolution of disputed facts or inferences.[5] The trial judge, not the jury, determines these facts and inferences. In deciding whether a stipulated damages clause is valid, then, the trial judge should inquire into all relevant circumstances, including such matters as the existence and extent of the anticipated and actual injury to the nonbreaching party.

The trial court's decision that a clause is or is not valid involves determinations of fact and law and will be reviewed as such. The reviewing court will uphold the factual determinations underlying its legal conclusion unless they are contrary to the great weight and clear preponderance of the evidence. *Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 475, 309 N.W.2d 125 (Ct. App. 1981). Whether the facts fulfill the legal standard, here reasonableness, is a determination of law, *id.,* and ordinarily the appellate court need not defer to the trial court's determination of a question of law. *United Leasing & Financial Services, Inc. v. R.F. Optical,* 103 Wis. 2d 488, 492, 309 N.W.2d 23 (Ct. App. 1981). Nevertheless, because the trial court's legal conclusion, that is, whether the clause is reasonable, is so intertwined with the factual findings supporting that conclusion, the appellate court should give weight to the trial court's decision, although the trial court's decision is not controlling. *See* Wright, *The Doubtful Omniscence of Appellate Courts,* 41 Minn. L. Rev. 751, 778–82 (1956) ; Morris, *Law and Fact,* 55 Harv L. Rev 1303, 1304 (1942).

To facilitate review, the trial court should separately state, on the record, its findings of fact and conclusions of law on the validity of the stipulated damages clause.

---

[5] *See McConnell v. L.C.L. Transit Co.,* 42 Wis. 2d 429, 439, 167 N.W.2d 226 (1969) ; *Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 475, 309 N.W.2d 125 (Ct. App. 1981) ; McCormick, *Damages,* sec. 157, p. 622 (1935).

The circuit court in this case did not state findings of fact and only inferentially ruled that the clause was valid when it ruled on the mitigation of damages issue. This court shall review the record to determine whether it supports the circuit court's legal conclusion.

Because the employer sought to set aside the bargained-for contractual provision stipulating damages, it had the burden of proving facts which would justify the trial court's concluding that the clause should not be enforced. *Northwestern Motor Car, Inc. v. Pope,* 51 Wis. 2d 292, 295, 187 N.W.2d 200 (1971). Placing the burden of proof on the challenger is consistent with giving the non-breaching party the advantage inherent in stipulated damages clauses of eliminating the need to prove damages, and with the general principle that the law assumes that bargains are enforceable and that the party asking the court to intervene to invalidate a bargain should demonstrate the justice of his or her position.[6] As we discuss below, we conclude that the employer failed to carry its burden, and we affirm the circuit court's conclusion that the stipulated damages clause is valid.

We turn now to the test that the trial court (and the appellate court) should apply in deciding whether a stipulated damages clause is valid. The overall single test of validity is whether the clause is reasonable under the totality of circumstances.[7] *See* sec. 356(1), Restatement

[6] McCormick, *Damages,* sec. 157 (1935); Note, *Liquidated Damages as Prima Facie Evidence,* 51 Ind. L.J. 189, 205 (1975). *But see* 5 Corbin, *Contracts,* sec. 1062, p. 355 (1964).

[7] *Seeman v. Biemann,* 108 Wis. 365, 375, 84 N.W. 490 (1900); *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389, 398, 175 N.W. 796 (1920); *Dekowski v. Stachura,* 176 Wis. 154, 156–57, 185 N.W. 549 (1922); *Dick v. Heisler,* 184 Wis. 77, 82, 198 N.W. 734 (1924); *Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 475, 309 N.W.2d 125 (Ct. App. 1981).

(Second) of Contracts (1979),[8] and sec. 402.718 (1), Stats. 1979–80.[9]

*See* McCormick, *Damages,* sec. 149, p. 606 (1935); 5 Williston, *Contracts,* sec. 779, p. 695 (Jaeger 3d ed. 1961); 5 Corbin, *Contracts,* sec. 1059, p. 346 (1964); Calamari and Perillo, *Law of Contracts,* sec. 14–31, p. 565 (2d ed. 1977); Restatement (Second) of Contracts, sec. 356(1) (1979); 3 Hawkland, *Uniform Commercial Code Series,* sec. 2–718:01, p. 426 (1982).

*See also* Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 Wis. L. Rev. 351, 356; Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach,* 77 Colum. L. Rev. 554 (1977); Macneil, *Power of Contract and Agreed Remedies,* 47 Cornell L.Q. 495, 503 (1962); Comment, *Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code,* 45 Fordham L. Rev. 1349, 1350 (1977); Note, *Liquidated Damages and Penalties under the Uniform Commercial Code and the Common Law: An Economic Analysis of Contract Damages,* 72 Nw. U.L. Rev. 1055, 1065 (1978).

[8] Sec. 356(1), Restatement (Second) of Contracts (1979), sets forth the test as follows:

"Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

[9] Sec. 402.718(1), Stats. 1979–80, which is U.C.C. sec. 2–718 (1), provides that liquidated damages may be agreed upon, "but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty." For discussion of the meaning of this provision see Comment, *Liquidated Damages: A Comparison of the Common Law and the Uniform Commercial Code,* 45 Fordham L. Rev. 1349 (1977); Note, *Liquidated Damages and Penalties under the Uniform Commercial Code and the Common Law: An Economic Analysis of Contract Damages,* 72 Nw. U.L. Rev. 1055, 1069–77 (1978).

The reasonableness test is a compromise the courts have struck between two competing viewpoints toward stipulated damages clauses, one favoring enforcement of stipulated damages clauses and the other disfavoring such clauses.

Enforcement of stipulated damages clauses is urged because the clauses serve several purposes. The clauses allow the parties to control their exposure to risk by setting the payment for breach in advance. They avoid the uncertainty, delay, and expense of using the judicial process to determine actual damages. They allow the parties to fashion a remedy consistent with economic efficiency in a competitive market, and they enable the parties to correct what the parties perceive to be inadequate judicial remedies by agreeing upon a formula which may include damage elements too uncertain or remote to be recovered under rules of damages applied by the courts. In addition to these policies specifically relating to stipulated damages clauses, considerations of judicial economy and freedom of contract favor enforcement of stipulated damages clauses.

A competing set of policies disfavors stipulated damages clauses, and thus courts have not been willing to enforce stipulated damages clauses blindly without carefully scrutinizing them. Public law, not private law, ordinarily defines the remedies of the parties. Stipulated damages are an exception to this rule. Stipulated damages allow private parties to perform the judicial function of providing the remedy in breach of contract cases, namely, compensation of the nonbreaching party, and courts must ensure that the private remedy does not stray too far from the legal principle of allowing compensatory damages. Stipulated damages substantially in excess of injury may justify an inference of unfairness in bargaining or an objectionable *in terrorem* agreement to deter a party from breaching the contract, to secure

performance, and to punish the breaching party if the deterrent is ineffective.

The reasonableness test strikes a balance between the two competing sets of policies by ensuring that the court respects the parties' bargain but prevents abuse. *See* Macneil, *Power of Contract and Agreed Remedies*, 47 Cornell L.Q. 495 (1962).

Over time, the cases and commentators have established several factors to help determine whether a particular clause is reasonable:[10] (1) Did the parties intend to provide for damages or for a penalty?[11] (2) Is the injury caused by the breach one that is difficult or incapa-

[10] Acknowledging as early as 1859 that the tests for distinguishing between liquidated damages and a penalty are ambiguous and that the court decisions are not uniform, *Pierce v. Jung*, 10 Wis. *30 (1859), this court in 1862 described the tests, which have remained substantially the same today, as follows: "where the damages were uncertain and incapable of definite ascertainment, the damages fixed in the contract . . . might be recovered. But . . . where, from the very nature of the provisions of the contract, it appeared that the actual damage might be accurately ascertained, and that it might be of trifling importance as compared with the amount fixed as stipulated damages, there it would be considered as a penalty." *Fitzpatrick v. Cottingham*, 14 Wis. *219, 221 (1862), citing *Pierce v. Jung, supra.*

Sec. 339, Restatement of Contracts (1932), set forth the test as follows:

"339. Liquidated Damages and Penalties.

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult or accurate estimation."

Compare sec. 356(1), Restatement (Second) of Contracts (1979), note 8 *supra.*

[11] *City of Madison v. American Sanitary Engineering Co.*, 118 Wis. 480, 503–504, 95 N.W. 1097 (1903); *Davis v. La Crosse Hospital Association*, 121 Wis. 579, 588, 99 N.W. 351 (1904);

ble of accurate estimation at the time of contract?[12] and (3) Are the stipulated damages a reasonable forecast of the harm caused by the breach?[13]

Recent discussions of the test of reasonableness have generally *b* discarded the first factor, subjective intent of the parties, because subjective intent has little bearing on whether the clause is objectively reasonable.[14] The label the parties apply to the clause, which might indicate their intent, has some evidentiary value, but it is not conclusive. *Seeman v. Biemann,* 108 Wis. 365, 374, 84 N.W. 490 (1900).

The second factor, sometimes referred to as the "difficulty of ascertainment" test, is generally viewed as helpful in assessing the reasonableness of the clause. The greater the difficulty of estimating or proving dam-

*Grant Marble Co. v. Marshall & Ilsley Bank,* 166 Wis. 547, 555, 165 N.W. 14 (1918); *McConnell v. L.C.L. Transit Co.,* 42 Wis. 2d 429, 438, 167 N.W.2d 226 (1969).

[12] *Pierce v. Jung,* 10 Wis. *30, 33 (1859); *Fitzpatrick v. Cottingham,* 14 Wis. *219, 221 (1862); *Seeman v. Biemann,* 108 Wis. 365, 374, 84 N.W. 490 (1900); *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389, 399, 175 N.W. 796 (1920).

*See also United Order of American Bricklayers and Stone Masons v. Thorleif Larsen and Son, Inc.,* 519 F.2d 331, 337 (7th Cir. 1975); 5 Corbin, *Contracts,* sec. 1060, p. 348 (1964); Calamari and Perillo, *Law of Contracts,* sec. 14–31, p. 565 (2d ed. 1977); Restatement (Second) of Contracts, sec. 356(1), comment *b* (1979).

[13] *Davis v. La Crosse Hospital Association,* 121 Wis. 579, 589, 99 N.W. 351 (1904); *United Leasing & Financial Services, Inc. v. R.F. Optical,* 103 Wis. 2d 488, 492, 309 N.W.2d 23 (Ct. App. 1981).

*See also* McCormick, *Damages,* sec. 150, p. 608 (1935); 5 Corbin, *Contracts,* sec. 1059, p. 345 (1964).

[14] 5 Williston, *Contracts,* sec. 778, p. 687, 693 (Jaeger 3d ed. 1961); 5 Corbin, *Contracts,* sec. 1058, p. 337 (1964); Calamari and Perillo, *Law of Contracts,* sec. 14–31, p. 565 (2d ed. 1977); Restatement (Second) of Contracts, sec. 356(1), comment *c* (1979).

ages, the more likely the stipulated damages will appear reasonable. *Sheffield-King Milling Co. v. Jacobs,* 170 Wis. 389, 402–403, 175 N.W. 796 (1920). If damages are readily ascertainable, a significant deviation between the stipulated amount and the ascertainable amount will appear unreasonable. *City of Madison v. American Sanitary Engineering Co.,* 118 Wis. 480, 503–504, 95 N.W. 1097 (1903). The "difficulty of ascertainment" test has several facets, depending on whether the stipulated damages clause is viewed from the perspective of the time of contracting or the time of breach (or trial). These facets include the difficulty of producing proof of damages at trial; the difficulty of determining what damages the breach caused; the difficulty of ascertaining what damages the parties contemplated when they contracted; the absence of a standardized measure of damages for the breach; and the difficulty of forecasting, when the contract is made, all the possible damages which may be caused or occasioned by the various possible breaches.[15]

The third factor concerns whether the stipulated damages provision is a reasonable forecast of compensatory damages. Courts test the reasonableness of the parties' forecast, as they test the "difficulty of ascertainment" by looking at the stipulated damages clause from the perspective of both the time of contracting and the time of the breach (or trial).

The second and third factors are intertwined, and both use a combined prospective-retrospective approach.

[15] For a discussion of the "difficulty of ascertainment" factor, *see* Macneil, *Power of Contract and Agreed Remedies,* 47 Cornell L.Q. 495, 502 (1962); Sweet, *Liquidated Damages in California,* 60 Calif. L. Rev. 84, 131 (1972); Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 Wis. L. Rev. 351, 354–56; Note, *Liquidated Damages and Penalties under the Uniform Commercial Code and the Common Law: An Economic Analysis of Contract Damages,* 72 Nw. U.L. Rev. 1055, 1063–65 (1978).

Although courts have frequently said that the reasonableness of the stipulated damages clause must be judged as of the time of contract formation (the prospective approach) and that the amount or existence of actual loss at the time of breach or trial is irrelevant, except as evidence helpful in determining what was reasonable at the time of contracting (the retrospective approach), the cases demonstrate that the facts available at trial significantly affect the courts' determination of the reasonableness of the stipulated damages clause. If the damages provided for in the contract are grossly disproportionate to the actual harm sustained, the courts usually conclude that the parties' original expectations were unreasonable.[16] Our prior decisions indicate that this court has employed the prospective-retrospective approach in determining the reasonableness of the stipulated damages clauses and has looked at the harm anticipated at the time of contract formation and the actual harm at the time of breach (or trial). *See, e.g., Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 475–76, 309 N.W. 2d 125 (Ct. App. 1981); *Seeman v. Biemann,* 108 Wis. 365, 374–75, 84 N.W. 490 (1900).

[16] 5 Corbin, *Contracts,* sec. 1063, p. 362–64 (1964), states:

"The probable injury that the parties had reason to foresee is a fact that largely determines the question whether they made a genuine pre-estimate of that injury; but the justice and equity of enforcement depend also upon the amount of injury that has actually occurred. It is to be observed that hindsight is frequently better than foresight, and that, in passing judgment upon the honesty and genuineness of the pre-estimate made by the parties, the court cannot help but be influenced by its knowledge of subsequent events."

*See also* Note, *Liquidated Damages and Penalties under the Uniform Commercial Code and the Common Law: An Economic Analysis of Contract Damages,* 72 Nw. U.L. Rev. 1055, 1065–69 (1978); 3 Hawkland, *Uniform Commercial Code Series,* sec. 2–718:02, p. 428 (1982).

As the above discussion demonstrates, the various factors and approaches to determine reasonableness are not separate tests, each of which must be satisfied for a stipulated damages clause to stand. Reasonableness of the stipulated damages clause cannot be determined by a mechanical application of the three factors cited above. 3 Hawkland, *Uniform Commercial Code Series,* sec. 2–718:01, p. 426 (1982). Courts may give different interpretations to or importance to the various factors in particular cases. Sweet, *Liquidated Damages in California,* 60 Calif. L. Rev. 84, 131–36 (1972) ; Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 Wis. L. Rev. 351, 378–83.

In ruling on the reasonableness of a stipulated damages clause, the trial judge should take into account not only these factors but also the policies that gave rise to the adoption of the reasonableness test as the test for distinguishing between enforceable liquidated damages provisions and unenforceable penalty provisions. [17]

With the reasonableness test and the policies underlying the test in mind, we now consider the circuit court's conclusion that the stipulated damages clause is reasonable. The employer argues that the stipulated damages clause is void as a penalty because the harm to the em-

[17] For a discussion of policies favoring judicial acceptance of stipulated damages and those justifying the courts' scrutiny of such clauses, see generally: Restatement (Second) of Contracts, sec. 356, comment *a* (1979) ; Dobbs, *Law of Remedies,* sec. 12.5, p. 823 (1973) ; Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 Wis. L. Rev. 351; Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach,* 77 Colum. L. Rev. 554 (1977) ; Sweet, *Liquidated Damages in California,* 60 Calif. L. Rev. 84 (1972) ; Macneil, *Power of Contract and Agreed Remedies,* 47 Cornell L.Q. 495 (1962) ; Note, *Liquidated Damages as Prima Facie Evidence,* 51 Ind. L.J. 189 (1975).

ployee was capable of estimation at the formation of the contract and was relatively easy to prove at trial. The employer further contends that calculating damages based on the entire wage for the unexpired term of the employment contract does not reasonably forecast the loss caused by the breach because such a calculation gives the employee a windfall recovery. The employer's arguments are not without merit. Under the rules of appellate review we will review the record for facts which support the circuit court's conclusion that the stipulated damages clause is reasonable.

When the parties to an employment contract estimate the harm which might result from the employer's breach, they do not know when a breach might occur, whether the employee will find a comparable job, and if he or she does, where the job will be or what hardship the employee will suffer. Nevertheless, the standard measure of damages provides, as the court of appeals noted in its opinion, a simple formula which is generally fairly easy to apply. According to black-letter law, when an employee is wrongfully discharged, damages are the salary the employee would have received during the unexpired term of the contract plus the expenses of securing other employment reduced by the income which he or she has earned, will earn, or could with reasonable diligence earn, during the unexpired term.[18] These damages are usually easily ascertainable at the time of trial.

[18] *Tetzlaff v. Pilot Press*, 270 Wis. 214, 217, 70 N.W.2d 678 (1955); *Gauf v. Milwaukee Athletic Club*, 151 Wis. 333, 334–35, 139 N.W. 207 (1912).

The measure of damages in *Smith v. Beloit Corp.*, 40 Wis. 2d 550, 559–60, 162 N.W.2d 585 (1968), to which the court of appeals refers, appears inconsistent with the general rule, since the period of wage loss up to the beginning of successor employment was used by the court to fix damages. No deduction was made for earnings for the remainder of the one-year employment

The standard calculation of damages after breach, however, may not reflect the actual harm suffered because of the breach. In addition to the damages reflected in the black-letter formulation, an employee may suffer consequential damages, including permanent injury to professional reputation, loss of career development opportunities, and emotional stress. When calculating damages for wrongful discharge courts strictly apply the rules of foreseeability, mitigation, and certainty and rarely award consequential damages. Damages for injury to the employee's reputation, for example, are generally considered too remote and not in the parties' contemplation.[19] Thus, actual harm suffered and damages that

period, even though plaintiff's subsequent earnings were noted as slightly higher than wages paid in the position from which he was discharged. However, the court substantially reduced the original jury verdict from $35,000 to $2,920; and no written contract existed fixing a definite term. These distinguishing facts may explain the measure of damages used in the case.

[19] *Smith v. Beloit Corp.*, 40 Wis. 2d 550, 559, 162 N.W.2d 585 (1968); *O'Leary v. Sterling Extruder Corp.*, 533 F. Supp. 1205, 1209–1210 (E.D. Wis. 1982); Calamari and Perillo, *Law of Contracts*, sec. 14–18, p. 546 (2d ed. 1977); McCormick, *Damages*, sec. 163, p. 635 (1935); Dobbs, *Law of Remedies*, sec. 12.25, p. 927 (1973).

Apparently some jurisdictions do allow recovery of consequential damages for breach of certain employment contracts. *See* cases in Annot., *Recovery by Writer, Artist, or Entertainer for Loss of Publicity or Reputation Resulting from Breach of Contract*, 96 ALR3d 437 (1979).

Dean McCormick, in his 1935 treatise on damages, foreshadowed the inadequacy of the measure of damages for wrongful discharge: "[T]he courts might expand their measure of compensation for breach of the employment *contract* by recognizing that deprivation of a job, if more than a casual one, not only affects usually a man's reputation and prestige, but ordinarily may so shake his sense of security as to inspire, even in men of firmness, deep fear and distress. It is a question of judicial statesmanship whether interests such as these should come to be recognized in measuring damages for wrongful discharge." McCormick, *Damages*, sec. 163, p. 639.

would be awarded in a legal action for breach of contract may not be the same. Nevertheless, in providing for stipulated damages, the parties to the contract could anticipate the types of damages not usually awarded by law.[20] The usual arguments against allowing recovery for consequential damages—that they are not foreseeable and that no dollar value can be set by a court—fail when the parties foresee the possibility of such harm and agree on an estimated amount.

We do not know in the case at bar how the parties calculated the stipulated amount, but we do know that both the employee and employer were concerned about job security. The employee desired a steady, long-term job and the employer wanted the employee, who was experienced in managing the Towne Hotel, to remain on the job. The parties did not suggest that the stipulated damages clause resulted from unequal bargaining power. The contract drafted by the employer provided for a fixed term of employment with a provision for stipulated damages in the amount of unpaid wages if the employer breached. Under these circumstances it is not unrea-

---

[20] *See United Order of American Bricklayers and Stone Masons v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331, 337 (7th Cir. 1975), where in discussing the reasonableness of the stipulated sum the court considered noncompensable harms resulting from breach as follows:

"While the difficulties of the advance accurate estimation of damages are otherwise adequately demonstrated . . . we do note the difficulty, if not impossibility, of quantifying the intangible damages to labor-management harmony resulting from failure to comply with provisions which have been hammered out in bargaining sessions."

*See also* Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?*, 1978 Wis. L. Rev. 351, 375–76; Goetz and Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach*, 77 Colum. L. Rev. 554, 572–75 (1977).

sonable to assume that the parties might have anticipated elements of consequential damages and drafted the stipulated damages clause to include salary lost while out of work, expenses of finding a new job, lower salary on the new job, and consequential damages.

In examining the instant stipulated damages clause and the record, we conclude that the parties' estimate at the time of contract formation of anticipated damages was reasonable when consequential damages are taken into account. Consequential damages may be difficult to ascertain at the time of contracting or breach and are difficult to prove at trial. The contract formula of full salary for the period after breach seems to be a simple and fair way of calculating all damages.

The employer argues that even if the stipulated amount is a reasonable forecast at the time of contract formation of anticipated loss, the amount is unreasonable from the perspective of the time of trial because the employee suffered no loss whatsoever, or if he suffered any loss it is disproportionate to (that is, significantly less than) the stipulated damages.

This court appears to have adopted the position that if the nonbreaching party suffers no damage the stipulated damages clause is a penalty. *See Hathaway v. Lynn,* 75 Wis. 186, 43 N.W. 956 (1889).[21] Apparently the court

[21] *See also Norwalk Door Closer Co. v. Eagle Lock and Screw Co.,* 153 Conn. 681, 220 A.2d 263, 268 (1966); *Massman Construction Co. v. City of Greenville,* 147 F.2d 925 (5th Cir. 1945); Restatement (Second) of Contracts, sec. 356(1), comment *b* (1979); 5 Corbin, *Contracts,* sec. 1063, p. 365, n. 60 (1964); Calamari and Perillo, *Law of Contracts,* sec. 14–31, p. 566, n. 97 (2d ed. 1977); Clarkson, Miller, and Muris, *Liquidated Damages v. Penalties: Sense or Nonsense?,* 1978 Wis. L. Rev. 351, 380, n. 82; Annot., *Right to Amount Stipulated in Contract for Breach Where It Appears There Were No Actual Damages or There Was No Proof of Such Damages,* 34 ALR 1336 (1925). But see McCormick, *Damages,* sec. 150, p. 610 (1935).

reasons, first, that if there is no damage, awarding stipulated damages violates the compensation principle of contract damages, and, second, that since one way to test reasonableness of stipulated damages is by comparing the estimated damages with actual harm suffered, if there is no harm the stipulated damages is automatically disproportionate to the harm. The court of appeals recently indicated approval of this doctrine in *Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 476, 309 N.W.2d 125 (Ct. App. 1981), stating that "[a] defendant against whom a liquidated damages clause is sought to be enforced 'should be allowed to show that there has in fact been no injury at all.'" (Citing 5 Corbin *Contracts* sec. 1063, p. 368 (1964).)

In this case we find it difficult to uphold the employer's position that the employee suffered no harm, because there is evidence in the record that the employee did suffer harm in being unemployed for approximately two and a half months after his discharge. At the end of this time, the employee obtained employment at another hotel, but there is no evidence that the jobs he held were comparable in terms of salary, opportunity for advancement, etc., to the job he held as manager of the Towne Hotel. There is no evidence that the employee's total compensation from the new job was equal to or exceeded the salary under the breached contract, and the record does not reveal whether the employee suffered consequential damages. All we know is that the employee appears to have suffered some harm. This case is therefore distinguishable from *Fields Foundation, Ltd. v. Christensen,* 103 Wis. 2d 465, 476, 309 N.W.2d 125 (Ct. App. 1981), upon which the employer relies, where the court held the stipulated damages clause unenforceable when the record established that the nonbreaching party suffered no harm.

Since the record in this case can be read to show that the employee suffered some harm, the question remains whether the stipulated damages are so much greater than the loss suffered by the employee that the stipulated damages constitute a penalty.

The employer has repeatedly asserted that this clause is a penalty because it does not take into account the amount the employee earned during the unexpired term of the contract. The employer argues that allowing the employee to recover the stipulated damages in this case gives the employee a windfall because he receives both the agreed upon salary and the ability to sell his services to another employer during the unexpired term of the contract: the employee will receive 21 months salary from the defendant employer and 18 months salary from the new employer. Ordinarily the circuit court would, in this type of stipulated damages case, use evidence of the employee's actual or potential earnings in assessing the overall reasonableness of the clause, since subsequent earnings would be relevant to the issue of the employee's actual loss resulting from the breach. In this case, as we discuss further below, there is no evidence in the record showing the employee's subsequent earnings, so there is no evidence supporting the employer's position that the employee would get a windfall from enforcement of the stipulated damages clause.[22]

As we said previously, the employer, the party challenging the contract, carries the burden of proving that the stipulated amount of damages is grossly disproportionate to the actual harm and thus unreasonable. *North-*

[22] Courts in other jurisdictions have upheld employment contract stipulated damages clauses similar to the one in issue here. *Zeppenfeld v. Morgan,* 185 S.W.2d 898 (Mo. App. 1945) ; *Anderson v. Cactus Heights Country Club,* 80 S. Dak. 417, 125 N.W.2d 491 (1963) ; *Musman v. Modern Deb, Inc.,* 50 A.D.2d 761, 377 N.Y.S.2d 17 (1975) ; *Seco Chemicals, Inc. v. Stewart,* 169 Ind. App. 624, 349 N.E.2d 733 (1976).

*western Motor Car, Inc. v. Pope,* 51 Wis. 2d 292, 295, 187 N.W.2d 200 (1971). The employer has failed to carry the burden of production and persuasion in this case. When the employee challenged the employer's affirmative defense of failure to mitigate damages in a pretrial motion to strike the defense, he pointed out the effect of the stipulated damages clause and clearly set forth the applicable law concerning the test to be applied to determine the validity of the clause. The employer did not directly refute the clause's validity in it's reply brief at the pretrial motion, and neither party offered evidence concerning reasonableness. The employer insisted that the employee had a duty to mitigate despite the stipulated damages clause. The circuit court granted the employee's motion to strike the defense on the basis of pretrial briefs, ruling that the employee had no duty to mitigate damages because the parties had stipulated their damages as part of their bargain. The circuit court thus inferentially upheld the validity of the clause.

At trial the employer attempted to put in evidence regarding the employee's salary at his new job. The circuit court refused to admit this evidence indicating that it had already ruled on the mitigation issue.

Even if this court could say that the circuit court erred in not directly considering the issue of reasonableness in its pretrial ruling and in not admitting evidence at pretrial or trial of the employee's earnings after discharge, this court could not reverse the circuit court on this record. At trial the employer took the erroneous position that the burden was on the employee to prove the reasonableness of the stipulated damages clause, not on the employer to prove the unreasonableness of the clause.[23] Although the employer attempted to elicit

---

[23] The employer proposed the following special verdict question and instruction relating to the validity of the liquidated damages clause which the circuit court refused to submit to the jury:

testimony from the employee regarding how much he earned on the new job, in order to prove the unreasonableness of the damages clause, the employer made no offer of proof as to what the testimony would be. An offer of proof is needed to preserve the facts underlying the objection for the record, sec. 901.03(1)(b), Stats. 1979–80.

The employer failed to get facts into the record showing that the employee suffered no damages or that his damages were significantly less than the stipulated amount. In short, the employer did not meet his burden of proof on the unreasonableness of the stipulated damages clause. Since we conclude that the record shows that the employee suffered some actual injury and that the record does not show that actual damages are disproportionate to the stipulated damages, we affirm the circuit court's ruling that the stipulated damages provision is reasonable and enforceable.

This court asked the parties to brief what it characterized as a sub-issue, namely, the employee's duty to mitigate damages. In breach of contract cases not involving liquidated damages clauses, this court has consistently held that a discharged employee has a duty to use ordinary care and reasonable efforts to seek other comparable employment and that in calculating damages the employer should be credited to the extent that the employee obtains work and earns wages or might have

"Q: Is the amount claimed by Donald Wassenaar as liquidated damages greatly disproportionate to any loss or injury resulting from the termination of his employment with the Towne Hotel?

"J.I.: A plaintiff seeking enforcement of a liquidated damages clause has the burden of establishing that at the time the contract was entered into the nature of the agreement was such that it would be impracticable or extremely difficult for a court to fix the actual damage in the event of a breach. *Rice v. Schmid,* 18 Cal. 2d 382, 385, 115 P.2d 498, 499 (1941)."

done so. *Klug v. Flambeau Plastics Corp.*, 62 Wis. 2d 141, 155, 214 N.W.2d 281 (1974) ; *State ex rel. Schilling and Klinger v. Baird*, 65 Wis. 2d 394, 397, 222 N.W.2d 666 (1974) ; *Tetzlaff v. Pilot Press*, 270 Wis. 214, 217, 70 N.W.2d 678 (1955) ; Dobbs, *Remedies*, sec. 12.25, p. 925 (1973) ; McCormick, *Damages*, secs. 159–60, pp. 627–30 (1935).

The employer relies on *United Leasing & Financial Services, Inc. v. R.F. Optical*, 103 Wis. 2d 488, 309 N.W. 2d 23 (Ct. App. 1981), to support its position that a liquidated damages clause requires the nonbreaching party to mitigate his losses. *United Leasing* is inapposite since in that case the liquidated damages clause itself provided that the defaulting lessee could be credited with the proceeds received by the lessor from re-rentals or resale of the equipment after repossession, reducing the lessee's liability for accelerated rents. The court of appeals did not decide in *United Leasing* that a liquidated damage clause which did not provide for such a credit would be unenforceable. 103 Wis. 2d at 494, n. 2.

While evidence of the employee's earnings after the employer's breach may be relevant in meeting the employer's burden of proving that the stipulated damages clause is unreasonable, once the court determines that the clause is reasonable, proof of the employee's actual loss (including what he earned or might have earned on another job) is no longer relevant. *See* 5 Corbin *Contracts* sec. 1062, p. 355 (1964). We hold that once a stipulated damages clause is found reasonable, the liquidated damages should not be reduced at trial by an amount the employee did earn or could have earned. *See Tollefson v. Green Bay Packers, Inc.*, 256 Wis. 318, 41 N.W.2d 201 (1950). Recalculating liquidated damages to credit the breaching party with the amount the employee earned or could have earned is antithetical to

the policies favoring liquidated damages clauses. Our holding comports with the rule in other jurisdictions where courts have not required employees to reduce the amount recovered under a liquidated damages provision by other earnings. *Musman v. Modern Deb, Inc.,* 50 A.D.2d 761, 377 N.Y.S.2d 17 (1975); *Seco Chemicals, Inc. v. Stewart,* 169 Ind. App. 624, 349 N.E.2d 733 (1976).

For the reasons set forth, we conclude that the judgment of the circuit court should be affirmed.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is affirmed.

CECI, J., took no part.