COURT OF APPEALS
DECISION
DATED AND FILED

December 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1359**

Cir. Ct. No. 2017CV2086

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

METROPOLITAN-MORELAND PLAZA, LLC C/O DAVID JORGENSEN,

    PLAINTIFF-RESPONDENT,

 V.

MORELAND WI, LLC, STEVE BERGHS, MERRILL HALL, MICHAEL

TRUSCHEL, JEREMY LOWELL AND GREG MURPHY,

    DEFENDANTS-APPELLANTS,

SUMMIT COMMERCIAL FITNESS, INC.,

    GARNISHEE.

---

       APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed*.

       Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Moreland WI, LLC, and five individually named guarantors (collectively, "Moreland WI") appeal a money judgment entered in favor of Metropolitan-Moreland Plaza, LLC ("Metropolitan").   Moreland WI argues the stipulated damages provisions in a commercial lease and guaranty are unenforceable, the circuit court erred by determining Metropolitan had no duty to mitigate damages, and genuine issues of material fact about the timing of the guaranty's exercise and Metropolitan's conduct when negotiating a potential lease assignment precluded summary judgment.   We reject Moreland WI's arguments and affirm.

## BACKGROUND

¶2     Metropolitan owns and operates a shopping center in Waukesha, Wisconsin.   In 2009, Moreland WI entered into a lease for a then-vacant property in the shopping center (a former grocery store), intending to operate a full-service health club (Gold's Gym) in the space.   Per the lease, Metropolitan agreed to provide the "building shell," along with a $2.3 million allowance for tenant improvements that would make the building usable as a fitness facility. Metropolitan took out a loan to finance the improvements.

¶3     The sixteen-year lease called for monthly rent payments of approximately $36,000, with payments increasing to approximately $44,000 near

the end of the lease term in 2025.[1] The lease permitted Metropolitan to terminate the lease in the event of default, at which time Metropolitan could recover from Moreland WI three things: (1) any unpaid rent that had accrued at the time of termination or re-letting of the premises; (2) any unpaid rent for the balance of the lease term, minus such amounts as Metropolitan could have reasonably collected by re-letting the premises; (3) "the unamortized amount of all sums expended by [Metropolitan] in connection with the preparation and/or improvement" of the premises, including any tenant improvement allowance.[2] The parties refer to this as the "Lease Stipulated Damages Provision."

¶4     To protect itself in the event of default, Metropolitan required Moreland WI's owners to sign a personal guaranty that included a stipulated damages provision tied to the amount of the allowance (the "Guaranty Stipulated Damages Provision"). Under that provision, the parties agreed to a damages schedule that included repayment of the full $2.3 million tenant-improvement allowance for default occurring during the first six years of the lease, then diminishing amounts in year seven through the end of the lease term (including extensions) based upon an eight-percent amortization rate over twenty-five years.[3]

---

[1] As Moreland WI notes, the rent due under the lease is composed of several amounts, including this base rent. The total amount due under the lease is immaterial to the issues on appeal.

[2] The lease also contains a provision that permitted Metropolitan to recover "the balance of the costs of any buildout performed for Tenant on Exhibit C assuming such costs were allocated over the base term of the Lease." Exhibit C merely states that the building was provided in "AS-IS" condition, and any repairs to the building's roof and structural system would be made along with the work contemplated by the tenant improvement allowance. The parties have not addressed the applicability of this provision, and we therefore do not further address it.

[3] Amendments to the guaranty adding or removing guarantors are not relevant to this appeal and will not be discussed.

Under the Guaranty Stipulated Damages Provision, Metropolitan was also entitled to one full year of rent in effect as of the date the guaranty was exercised.

¶5      Following the renovations, Moreland WI successfully operated Gold's Gym in the facility for several years. In early 2016, Moreland WI began experiencing financial difficulties. Moreland WI fell behind on its rental payments in the summer of 2016 and was put on notice of its default under the lease. Moreland WI proposed a rent reduction to Metropolitan in July 2016, but Metropolitan rejected its terms.

¶6      Instead, Metropolitan countered with a proposal to temporarily reduce rental payments starting September 1, 2016, and ending August 31, 2017, if certain conditions were met. The amount of the rent reduction was to be treated as a short-term loan by executing a promissory note due and payable on December 31, 2017. The parties incorporated these terms into a third amendment to the lease agreement, executed October 31, 2016, by which the parties stated they intended to "resolve the default."

¶7      On September 1, 2017, Moreland WI was to resume making full rental payments under the lease but failed to do so. It also failed to pay the amount due under the promissory note. Eventually, an eviction order was entered requiring Moreland WI to vacate the premises.[4]

¶8      Metropolitan filed the present lawsuit on November 29, 2017, seeking the amounts due under the lease and promissory note. In early 2018,

---

[4] The eviction proceedings were held before the Hon. Kathryn W. Foster and are not at issue on appeal.

4

Metropolitan sought partial summary judgment on its claim for default of the promissory note, which the circuit court granted. In the interim, Moreland WI counterclaimed, asserting Metropolitan had charged excessive management fees and had breached its duty of good faith and fair dealing by unreasonably withholding its consent to assign the lease to a third party, Town Sports International ("TSI").[5] Metropolitan was granted partial summary judgment on its claim for breach of the promissory note, and a money judgment was entered.

¶9 After further discovery, including experts retained by both parties, Metropolitan sought summary judgment on its claim for breach of the lease and guaranty. The circuit court rejected Moreland WI's argument that the guaranty had been exercised in August 2016 when the parties were negotiating to cure Moreland WI's default. The court also rejected Moreland WI's argument that the stipulated damages provisions were unenforceable penalty clauses, remarking that the provisions were a reasonable allocation of the parties' respective risks, and the damages called for were not disproportionate to the actual harm Metropolitan expected to, or did, suffer.

¶10 The circuit court then considered Moreland WI's argument that Metropolitan had failed to mitigate its damages by refusing to lease the premises to TSI. The court acknowledged evidence that in December 2017 Metropolitan engaged in negotiations with TSI and prepared a fourth lease amendment reflecting the proposed assignment. Metropolitan rescinded that proposal in January 2018. Moreland WI argued that the withdrawal of the assignment

---

[5] Although we use the collective designation "Moreland WI," the counterclaims were only advanced on behalf of the LLC and not the individual guarantors.

effectively foreclosed Moreland WI from finding a new tenant to assume the lease, thereby constituting a failure to mitigate damages on Metropolitan's part and a breach of Metropolitan's duty of good faith and fair dealing.

¶11 The circuit court regarded Moreland WI's counterclaims as not yet being before it for resolution, but it rejected Moreland WI's arguments regarding a failure to mitigate damages. The court noted the TSI assignment was contingent upon TSI also being able to negotiate a lease assignment for another gym facility in Milwaukee. TSI did not enter into a lease for that facility, and a representative of the landlord for that facility told Metropolitan prior to the January 2018 withdrawal that the parties were too far apart, and he did not believe a deal with TSI was close.[6] TSI never responded to Metropolitan's assignment proposal nor asked to negotiate any terms. Under these circumstances, the court concluded there was no fact issue for trial regarding Moreland WI's assertion that Metropolitan failed to mitigate its damages.

¶12 Moreland WI filed a motion for reconsideration, asserting that there were reasonable inferences from the facts that precluded summary judgment. As relevant here, in addressing Moreland WI's renewed arguments regarding mitigation, the circuit court pointed out that in *Wassenaar v. Panos*, 111 Wis. 2d 518, 521, 331 N.W.2d 357 (1983), the supreme court held that "where the stipulated damages clause is a valid provision for liquidated damages, the doctrine

---

[6] Sheldon Oppermann, the landlord's representative, stated during a deposition that a phone call with a TSI representative in February 2018 left him "not … very positive about" a deal, with TSI's proposal being something of a "take it or leave it" proposition. He further stated that after the brief phone call there was no further contact from TSI. According to one of Moreland WI's affiants, TSI did not become aware of Metropolitan's withdrawal of the proposed assignment until after the February 2018 conversation.

of mitigation of damages is not applicable to determine the damages awarded the nonbreaching party." In response, Moreland WI noted *Wassenaar* concerned an employment contract, and it argued the statutory provision imposing a landlord's duty to mitigate, WIS. STAT. § 704.29(2)(b) (2019-20),[7] took precedence. Nonetheless, the court accepted *Wassenaar* as controlling and denied Moreland WI's reconsideration motion, concluding Moreland WI had failed to demonstrate either newly discovered evidence or a manifest error of fact or law.

¶13 Moreland WI's counterclaims were the subject of further briefing and evidentiary submissions. At a subsequent hearing, Moreland WI again asserted that there were genuine issues of material fact that precluded summary judgment regarding Metropolitan's alleged breach of the duty of good faith and fair dealing. The court concluded the evidence gave rise to no conclusion other than that TSI was not seriously pursuing a lease assignment for Metropolitan's property. The court further concluded there was no evidence that Metropolitan breached its duty of good faith and fair dealing by interfering with any potential assignment or withdrawing the assignment proposal after hearing nothing from TSI. Indeed, the court noted that Metropolitan's obligations under the lease were merely to refrain from unreasonably withholding consent for an assignment. The court concluded there was no evidence, nor reasonable inferences from the evidence, that would allow a fact finder to conclude that Metropolitan acted in bad faith. The court granted Metropolitan summary judgment on the counterclaims and entered a judgment in its favor. Moreland WI now appeals.

---

[7] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

**DISCUSSION**

¶14 We independently review a grant of summary judgment using a well established methodology. *Tews v. NHI, LLC*, 2010 WI 137, ¶¶40-41, 330 Wis. 2d 389, 793 N.W.2d 860. Summary judgment is appropriate where there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Even if the facts are undisputed, summary judgment is not appropriate if reasonable, but differing, inferences can be drawn from the undisputed facts. *Tews*, 330 Wis. 2d 389, ¶42.

¶15 Moreland WI challenges the grant of summary judgment on four bases. First, it argues the stipulated damages provisions in the lease and guaranty were invalid and unenforceable under *Wassenaar*. Second, it argues the circuit court erred by concluding that the guaranty had not been exercised in 2016 and, as a result, by failing to offset the stipulated damages by the amount of rent paid after September 2016.

¶16 Moreland WI's third and fourth arguments are interrelated, and we address them together. Moreland WI argues that the circuit court erred as a matter of law when it determined that *Wassenaar* controlled on the issue of duty to mitigate damages arising from the stipulated damages provisions. Moreland WI also argues there was a genuine issue of material fact regarding whether Metropolitan breached its duty of good faith and fair dealing relating to the assignment of the lease. For the reasons that follow, we reject these arguments.

*I. Validity of the Stipulated Damages Provision*

¶17 The validity of a stipulated damages provision is determined by analyzing "whether the clause is reasonable under the totality of the

circumstances."[8]  *Wassenaar*, 111 Wis. 2d at 526.  Reasonableness is generally assessed using three factors: (1) whether the parties intended to provide for damages or for a penalty; (2) whether the injury caused by the breach was difficult or incapable of accurate estimation at the time of the contract; and (3) whether the stipulated damages were a reasonable forecast of the harm caused by the breach. *Id.* at 529-30.  The party seeking to set aside the bargained-for contractual provision—here, Moreland WI—bears the burden of presenting facts showing the clause should not be enforced.  *Id.*

¶18  Moreland WI emphasizes that the *Wassenaar* test essentially evaluates both the harm anticipated at the time of contract formation and the actual harm at the time of breach.  *See Westhaven Assocs. v. C.C. of Madison, Inc.*, 2002 WI App 230, ¶17, 257 Wis. 2d 789, 652 N.W.2d 819.  That being so, Moreland WI argues that Metropolitan has fully recovered its tenant improvement allowance, as the building is worth more today than it was prior to the renovations. Moreland WI also argues that its expert appraiser's report (the "Vitale report") establishes that the rental value has increased.  In essence, Moreland WI argues the stipulated damages provisions are retrospectively unreasonable because Metropolitan has suffered no harm.

¶19  We agree with the circuit court that no reasonable fact finder could conclude the stipulated damages provisions were unreasonable in light of the

---

[8] Typically, the validity of a stipulated damages provision is reviewed as a mixed question of fact and law, with the circuit court's legal conclusion given some (but not controlling) weight by the appellate court given that reasonableness is a highly fact-dependent inquiry. *Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983).  On summary judgment, however, we are merely ascertaining whether there are facts, or reasonable inferences from those facts, that create a dispute for trial.  Because there is no fact finding to review, the issue presented here is purely one of law, and we do not defer in any manner to the circuit court's determination.

evidence Moreland WI has submitted.[9] The Vitale report's assessment of market rent ignores the key fact that the building is vacant with no appreciable prospective tenants. Yet Vitale was instructed to make the "extraordinary assumption" that "the Highest and Best Use of the Gold's Gym space is for continued fitness center use." And to the extent that Moreland WI argues the building itself has appreciated in value, Moreland WI has failed to cite any evidence in the record that the post-termination value of the real property was front of mind for any of the parties at the time the lease was signed.[10] Contrary to Moreland WI's assertion, Metropolitan is not better off than it would have been absent the breach—Metropolitan has lost the ability to generate revenue or recoup any of its expenditures for the remainder of the lease term.

¶20 Moreland WI nonetheless argues that *Wassenaar* requires a comparison of a property's prelease and postbreach value "[r]egardless of whether the parties considered the potential increase in value to the Property resulting from the Tenant Improvements when they entered into the Lease." This is a dubious proposition, as a matter of law; *Wassenaar* arose in the employment context and did not involve issues related to the valuation of real property. While *Wassenaar* certainly endorses a retrospective analysis, it is less than clear that *Wassenaar*

---

[9] Moreland WI argues the circuit court's comment that "the Vitale appraisal, that shows the property really isn't worth as much as you'd hope it would be worth," constitutes a clearly erroneous factual finding. A court does not make factual findings on summary judgment; it merely decides whether there is a genuine issue of material fact for trial. The court's comment in this regard came as it was evaluating the situation that led to the breach and its aftermath, including the undisputed fact that Metropolitan was left without a tenant for a considerable period of time.

[10] In any event, as the circuit court recognized, at the time the contract was formed the parties were obviously aware that at the end of the lease term Metropolitan would be in possession of a building that had been significantly renovated.

dictates that an increase in property value alone renders stipulated damages provisions unenforceable under the circumstances here.

¶21 That aside, the touchstone concerning the validity of a stipulated damages provision is reasonableness. Even if the property is arguably "worth more" in the abstract, there was no tenant interested in leasing it. To the extent Moreland WI posits that the tenant improvement allowance included some general repairs to the building structure that any tenant would benefit from, it has not undertaken the difficult task of differentiating these "general" improvements from the more specific ones (e.g., "yoga studio, cardio cinema, tanning rooms, child care area, … large open gym areas[,] … indoor lap pool and large hot tub") that the Gold's Gym required.

¶22 Indeed, as a general matter Moreland WI glosses over the considerable specific improvements Metropolitan made to accommodate Moreland WI's use that may be unsuitable for other prospective tenants. This appears to be precisely the uncertainty these parties sought to mitigate when they agreed to the stipulated damages provisions. Metropolitan expended a significant sum of money to create a turnkey property designed to Moreland WI's specifications. Both the size of the facility and the nature of the improvements made it unclear whether another tenant could be found in the event that Moreland WI vacated the premises prior to the end of the sixteen-year term.

¶23 Moreland WI also summarily argues that enhancements it made to the property in 2014 at a cost of over $400,000 demonstrate the unreasonableness of the stipulated damages provision. The portion of the Vitale report Moreland WI cites to as proof of this expenditure does not indicate that these improvements were contemplated under the lease or its amendments. Rather, it appears the space

was originally designed for membership sales and storage, but Moreland WI desired to convert it into additional useable fitness space. The mere fact that Moreland WI invested additional money in the space—undoubtedly in an effort to bolster its business—does not establish the unreasonableness of the stipulated damages provisions, either at the time of contracting or postbreach.

¶24 Finally, Moreland WI posits that it has demonstrated the unreasonableness of the stipulated damages provisions under an alternative hypothetical scenario. Moreland WI notes that had it breached the lease on the final day, the stipulated damages provisions would *still* require an approximately $1.3 million payment. "We do not consider hypothetical scenarios." *Schumacker v. Schumacker*, 2012 WI App 132, ¶9, 345 Wis. 2d 60, 823 N.W.2d 839. Contrary to Moreland WI's suggestion, Metropolitan is not attempting to collect "millions of dollars in damages in the dying days of a lease." Moreland WI breached the lease with years remaining, and insofar as these facts are concerned, the parties reasonably allocated the risk that Metropolitan would expend significant sums to build the space to Moreland WI's specifications without having a tenant to occupy it. We perceive no reason in this case to disrupt the parties' allocation of risk.

## II. *Exercise of the Guaranty in 2016*

¶25 Moreland WI next argues the circuit court erroneously determined the guaranty had not been exercised in August 2016, a fact of significance given that Moreland WI claims it is entitled to offset the amount of the stipulated damages by the amount of rent paid after that time. Moreland WI contends that whether the guaranty was exercised was a disputed issue of fact for trial, particularly in light of the fact that Metropolitan allegedly asserted pre- and post-

signing of the third lease amendment that "these documents did not terminate or affect the prior demand on the Guarantors as made in [Metropolitan attorney] Don Murn['s] August 26, 2016 letter."

¶26   We agree with Metropolitan that no reasonable fact finder could conclude that the guaranty had been exercised in 2016.  The August 26, 2016 letter was sent at a time when Moreland WI was in default of the lease and had requested a rent reduction as a result of financial hardship.  In the letter, Murn proposed a solution that would treat the rent shortfall as a short-term loan payable on December 31, 2017.  The letter provided a date by which Moreland WI had to agree to the terms set forth in the letter, then continued:

> If Tenant does not agree to the above, Landlord will pursue all rights and remedies allowed per the Lease which include the following:
>
>   Pursuant to the terms of a Guaranty of Lease dated the 3rd day of February, 2009, … please be advised that the Landlord hereby exercises its right to proceed directly against the Guarantors with regard to the Lease ….

¶27   As Metropolitan argues, the plain text of the letter constitutes a threat to pursue the remedies available under the lease and guaranty if the parties could not reach an agreement to resolve the default.  The parties subsequently cured the default, including by agreeing to a reduced rental rate and executing the note mentioned in Murn's letter.[11]  It is undisputed that no guarantor payments were requested or received in connection with these negotiations.  We agree with

---

[11] To the extent Moreland WI argues the guaranty was exercised by the mere passage of time following Murn's letter, the record demonstrates to the contrary.  The third lease amendment specifically states it was agreed to as a resolution of the default.

the circuit court that the undisputed evidence shows the guaranty was not exercised as a result of Murn's August 2016 letter.

### III. Mitigation/Duty of Good Faith and Fair Dealing

¶28 Moreland WI next asserts that the circuit court erroneously concluded that Metropolitan had no duty to mitigate damages due under the stipulated damages provision. Moreland WI argues *Wassenaar*'s holding regarding the duty to mitigate in the stipulated damages context has no applicability in a commercial lease context given WIS. STAT. § 704.29(2)(b), which Moreland WI argues imposes on landlords the obligation to make reasonable efforts to re-rent the premises.

¶29 We need not determine how *Wassenaar* and WIS. STAT. § 704.29(2)(b) interact with one another given that Moreland WI's arguments fail even if it is correct that Metropolitan had a duty to mitigate damages despite the stipulated damages provisions. Moreland WI's assertions that Metropolitan breached both its duty to mitigate and its duty of good faith and fair dealing are predicated upon the notion that Metropolitan was responsible for the failure of the proposed lease assignment to TSI. We agree with Metropolitan that on this record no reasonable fact finder could reach that conclusion.

¶30 "Every contract implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240 (quoting *Chayka v. Santini*, 47 Wis. 2d 102, 107 n.7, 176 N.W.2d 561 (1970)). Among those types of bad faith recognized are "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to

cooperate in the other party's performance." ***Foseid v. State Bank of Cross Plains***, 197 Wis. 2d 772, 796-97, 541 N.W.2d 203 (Ct. App. 1995).

¶31     Moreland WI argues that the facts of record allow a reasonable fact finder to conclude

> that Moreland WI … brought a potential assignee for the Property to [Metropolitan], that the parties began negotiating the assignment and were reasonably close to agreement on a deal, but that even though the TSI assignment would extend the Lease term by a period of two years, [Metropolitan] realized it might forfeit the "almost $3 million" in guarantees if the assignment was consummated, so it withdrew from the deal.

While Moreland WI is correct that the success of its counterclaim is not contingent upon it showing that Metropolitan unreasonably withheld its consent to an assignment, Moreland WI's analysis fails to account for the totality of the record evidence which adds additional context to these facts it relies on and demonstrates that summary judgment was proper.

¶32     Notably lacking in this record is any indication that TSI was ready and willing to accept an assignment of the lease at any point in time. TSI took no action on the Metropolitan assignment proposal for approximately one month before Metropolitan withdrew it. Even thereafter, Metropolitan's agent testified Metropolitan was "open to future conversations with TSI." There is no evidence TSI contacted Metropolitan to continue negotiations.

¶33     Moreland WI nonetheless argues that Metropolitan bore responsibility for the failed assignment because its actions caused the negotiations relating to the Milwaukee facility to collapse. While there is evidence that Metropolitan knew TSI's interest in these facilities was a "package deal," there is no evidence tending to support an inference that the mere withdrawal of the

assignment proposal (which TSI only learned of much later) caused TSI to terminate its pursuit of the facilities. Rather, the evidence shows that there was little chance that a lease for the Milwaukee facility would be consummated. It appeared to the Milwaukee landlord's agent that TSI was not open to negotiating, and although he did not consider a deal dead, there was no movement by TSI on reaching an agreement.

¶34 At most, the facts presented by Moreland WI do nothing more than suggest that negotiations could have continued. That is insufficient to demonstrate a failure to mitigate or a breach of Metropolitan's duty of good faith and fair dealing under these facts.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.